UNITED STATES ~~GOVERNMENT~~ District T.T. COURT

NORTHERN District OF GEORGIA
Atlanta Division

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 03 2017

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

1 William James, Sui Juris
  9100 South Drexel Ave
  Chicago Illinois 60619
2 Terri V. Tucker AKA
  (Donald-Strickland), Sui Juris
  1136 Joslin Path
  Douglasville, GA 30134

      Plaintiffs,

          vs

1  Barbara Hunt
2  Harpo
3  Lionsgate Entertainment
4  Oprah Winfrey Network
   (OWN)
5  Oprah Winfrey
6  Tyler Perry Company
7  Tyler Perry Studios (TPS)
8  Tyler Perry aka Emmett
   Perry Jr. aka Emmett J.
   Perry aka Buddy aka John
   Ivory (all other Aliases)
   Defendants_____

:

1: 17 - CV - 1181

CIVIL ACTION NO._____

VERIFIED COMPLAINT FOR
DECLATORY AND INJUNCTIVE
RELIEF AND DAMAGES FROM
RACKETEERING, CONSPIRACY
TO ENGAGE IN A PATTERN OF
RACKETEERING ACTIVITY
AND RELATED CLAIMS;

JURY DEMANDED

CIVIL RICO
18 U.S.C. 1961and 1964
DIVERSITY
28 U.S. Code § 1369
SHERMAN ANTI-TRUST
CLAYTON ANTI-TRUST
U.S. CONSTITUTION

i

## CIVIL LAWSUIT: RACKETEERING INFLUENCED AND ORGANIZATIONS ACT (RICO), SHERMAN ACT, CLAYTON ACT

William James   4/3/247

William James
PRIVATE ATTORNEY GENERAL
9100 South Drexel Ave
Chicago, Illinois 60619
Email: BJ255758@yahoo.com
Phone 773-990-9973

4|3|17

Terri V. Tucker (aka)
Donald-Strickland
PRIVATE ATTORNEY GENERAL
1136 Joslin Path
Douglasville, GA 30134
terrilowe43@gmail.com
Phone: 347-705-2043

ii

## TABLE OF CONTENTS

Civil Cover Sheet……………………………………………………….1-2

Initial Complaint for Civil RICO Remedies………………………………1-25

Sworn Declatory Statement…………………………………………….26

Certificate of Compliance Required By FRAP 32(A)(7)(C)…………….26-27

Certificate of Service…………………………………………………27-28

Civil Rico Supreme Law, Exhibit A pp.2……………………………..1-2

Private Attorney General, Exhibit B pp. 2……………………………1-2

Certificate of Copyright Registration James & Tucker, Exhibit C pp. 3…..1-3

Supreme Court Case United States v. Paramount Pic. Exhibit D pp. 5…….1-5

Pacer Civil Case Locator-Tyler Perry, Exhibit E p.1………………………..1

Pacer Civil Case Locator-Oprah Winfrey, Exhibit F pp.3…………………..1-3

UNITED STATES GOVERNMENT COURT

NORTHERN DISTRICT OF GEORGIA

1   William James, Sui Juris
    9100 South Drexel Ave
    Chicago Illinois 60619                    :
2   Terri V. Tucker AKA
    (Donald-Strickland), Sui Juris
    1136 Joslin Path
    Douglasville, GA 30134

            Plaintiffs,

                                        CIVIL ACTION NO._____

            vs                          :

1   Barbara Hunt                        VERIFIED COMPLAINT FOR
2   Harpo                               DECLATORY AND INJUNCTIVE
3   Lionsgate Entertainment             RELIEF AND DAMAGES FROM
4   Oprah Winfrey Network               RACKETEERING, CONSPIRACY
    (OWN)                               TO ENGAGE IN A PATTERN OF
5   Oprah Winfrey                       RACKETEERING ACTIVITY
6   Tyler Perry Company                 AND RELATED CLAIMS;
7   Tyler Perry Studios (TPS)
8   Tyler Perry aka Emmett              JURY DEMANDED
    Perry Jr. aka Emmett J.
    Perry aka Emmett M. Perry           CIVIL RICO
    Aka Emmbre R. Perry aka             18 U.S.C. 1961and 1964
    Emmitt R. Perry aka Emmett          DIVERSITY
    T. Perry aka Willie M. Perry        28 U.S. Code § 1369
    aka Emmett Ty Perry aka             SHERMAN ANTI-TRUST
    Emmett Perry aka Tyler E            CLAYTON ANTI-TRUST
    Perry aka Emmbre R Perry            U.S. CONSTITUTION
    Aka Emmitt Perry, Jr. aka
    Buddy aka John Ivory

            Defendants_____

            *Initial COMPLAINT for Civil RICO Remedies*

## CIVIL LAWSUIT: RACKETEERING INFLUENCED AND ORGANIZATIONS ACT (RICO), SHERMAN ACT, CLAYTON ACT

## A. INTRODUCTION

1. This is a complex civil action for Racketeering Influenced and Organizations Act (RICO) remedies authorized by the federal statutes at 18 U.S.C. 1961 1(a) and 1(b) *et seq.*; for declaratory and injunctive relief; for actual, exemplary (punitive) damages; and for all other relief which this honorable District Court deems just and proper under all circumstances which have occasioned this Initial COMPLAINT. See, 18 U.S.C. §§ 1964(a) and (c) ("Civil RICO"). The primary cause of this action is that the Defendants conspired in a widespread criminal enterprise operating as a cartel under legal businesses engaging in patterns of racketeering activities and organized crime across State and international lines; conspiring to engage in racketeering activity involving numerous RICO predicate acts during the past ten (10) calendar years or more. (See, Exhibit A, pp.2)

2. The predicate acts cluster around criminal copyright plagiarism, trafficking counterfeit goods, tampering with and retaliation against qualified attorneys, obstructing justice. See, 18 U.S.C. §§ 2319, 2320, 1512, 1513, 2315, 1503, 1510, 1511 and 1581-1588, *counterfeits, plagiarisms, threats, violence and forgeries.* See 18 U.S.C. §§ 1341 and 1344, respectively.

*Initial COMPLAINT for Civil RICO Remedies*

[RICO] bring to bear the pressure of **"Private Attorneys General."** The objective in both the Clayton Act and RICO is the carrot of treble damages. See, *Agency Holding Corp. v. Malley-Duff & Associates,* Supreme Court Reporter 2759. See also 483 U.S. 143 at page 151 (1987). "private attorneys general," (See Exhibit B, pp.2)dedicated to eliminating racketeering activity. 3 *Id.*, at 187 (citing *Malley-Duff*, 483 U.S., at 151 ) (civil RICO) The provision for treble damages. See, *Rotella v. Wood et al.,* 528 U.S. 549 (2000). Dasher v. Housing Authority of City of Atlanta, Ga., D.C.Ga., 64 F.R.D. 720, 722. *See also,* Equal Access to Justice Act.

## B. JURISDICTION AND VENUE

3. The Federal District Court has Jurisdiction Pursuant to the Civil RICO remedies at 18 U.S.C 1964 and the holdings of the U.S. Supreme Court in the case of, Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479 (1985)and the U.S. Court of Appeals for the Ninth Circuit in Lou v. Belzberg, 834 F.2d 730, hn. 4 (9th Cir. 1987), Plaintiffs invoke and charge Defendant's with this law for counterfeits over years of conspiracy and racketeering.

4. Jurisdiction is based upon federal question, to wit, the Copyright Act of 1976 and 1909 as amended. Title 17 506(a); 1201; 1202; and 1203, United States Code; Title 18 U.S. Code § 2319, the Defendants conspired in Criminal Plagiarism to commit copyright counterfeits of Plaintiff's

*Initial COMPLAINT for Civil RICO Remedies*

Intellectual Properties "Lover's Kill" hereinafter "LK" and "Bad Apples Can Be Good Fruit" hereinafter "BAGF" as; Model Penal Code §§ 220.1–.3 (1962). (See, Exhibit C, pp. 3)

6. The Sherman Antitrust Act, 15 U.S.C. §§ 1–7 is a landmark federal statute in the history of the United States antitrust law or ("competition law") passed by Congress in 1890. *United States v. Paramount Pictures, Inc.*, 334 US 131 (1948) (See, Exhibit D, pp.5) (The Defendants executed a violation of the Hollywood Antitrust Case of 1948. The Defendants conspired to monopolise the television and film industry; by owning the Studios and television network, counterfeiting the writings of enslaved copyright owners throughout the country, starring in counterfeited works as their own and entering into exclusive deals with one another. Monopoly Section 2 of the Act forbade monopoly. Clayton Antitrust Act Clayton Act, 15 U.S.C. §§ 12-27, 29 U.S.C. §§ 52-53.

7. The U.S. Constitution – 1ST Amendment, Title 42, Part VII, Ch. 83 and Sub-Chapter A, Using name or likeness (1) Invasion of Privacy of name and likeness (2) Violation of the Right of Publicity; Plaintiff's works were based on life experiences. Article 1, Section 8, (8) Defendant's intentionally violated the Plaintiff's exclusive copyrights by committing plagiarism to their respective writings and discoveries, Defendants acted in

concert of a conspiracy which violated the creative control of how the Plaintiff's works were articulated without an agreement.

8. Federal Conspiracy Law, two elements: (1) an exclusive agreement was signed between Tyler Perry aka Emmett Perry, Jr.(and all other known and unknown aliases); Oprah Winfrey in 2013; all Defendants inclusive (2) between two Executive Owners and Chief Principal decision makers. Laundering drug money into a legal business enterprise, remove trade secrets, repeatedly from 1999 through 2017. Settlement agreements and court admissions serve as admissible evidence against all. The Hobbs Act - Civil Conspiracy 18 U.S.C. 371, The Defendants conspired to counterfeit, extort, plagiarize, threaten, cause defamation of character, retaliate, bully, forge, financially distress using Plaintiffs intellectual property gains. *United States v. Franks*, 511 F.2d 25, 31 (6th Cir. 1975)

9. (WIPO), Copyright Treaty (WCT) (1996). The WIPO Copyright Treaty (WCT) is a special agreement under the Berne Convention The Distributer and known conspirator Lionsgate which committed RICO Act, mail fraud when moving digital counterfeit copies of the Forgery and plagiarized intellectual properties which were protected pursuant to the Title 17 U.S. Code 506(a) 18 U.S. Code 2319 and all other Criminal Copyright.

10. Venue 28 U.S. Code § 1391, Defendants are based in Atlanta, GA.

*Initial COMPLAINT for Civil RICO Remedies*

11. 28 U.S. Code § 1369 Multiparty, Multiform Jurisdiction,

## B. **THE PARTIES**

12. Plaintiff WILLIAM JAMES ("WJ") ("PLAINTIFFS") is a private adult who doing business address above; plaintiff is currently a Carpenter.

13. Plaintiff TERRI V. TUCKER ("PLAINTIFFS") is a private adult formerly known as TERRI V. DONALD-STRICKLAND, TLO-REDNESS Who does business at the above address; plaintiff is currently employed with the United States Army.

14. Defendant Tyler Perry ("TP") ("DEFENDANT") and Cartel Boss is a private adult individual who owns/writes/dba for the Tyler Perry Studios ("TPS") is a domestic private corporation doing business in this district, with its corporate headquarters in Atlanta, GA.

15. Defendant Oprah Winfrey ("OW") ("DEFENDANT") and Cartel Ring Leader is a private adult individual who owns/writes/dba for the Oprah Winfrey Network (OWN) a domestic public corporation doing business in California.

16. LIONSGATE ENTERTAINMENT ("DEFENDANTS) and Cartel Distributor is a company that is Public domestic corporation doing business in California.

17. BARBARA HUNT (DEFENDANTS) and Cartel Member is an adult a

private citizen working as an executive Accountant for the HARPO studios in Chicago, Illinois.

18.The doctrine of respondent superior applies to all of the defendants.

### Cause of Action

19. (1) that the defendants, Tyler Perry, Tyler Perry Studios, Oprah Winfrey, Oprah Winfrey Networks (OWN) received money from a pattern of racketeering activity such as; violations of properties protected under the copyright act, drug money, bribery, threats financial and physical, counterfeit and forgeries of intellectual property (2) invested that money in an enterprise of Tyler Perry Studios and Oprah Winfrey Network, (3) the enterprise affected interstate commerce, and (4) an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves. *Johnson v. GEICO Cas. Co*., 516 F. Supp. 2d 351 (D. Del. 2007). C.

## THE FACTS

20. PLAINTIFF, William James a citizen of the United States, Authored a screenplay entitled "Lover's Kill" (hereinafter referred to as "LK").

21.   PLAINTIFF, Terri Tucker aka (Donald-Strickland) a citizen of the United States, authored a book entitled "Bad Apples Can Be Good Fruit." (BAGF) book. (hereinafter referred to as "BAGF").

22 Plaintiffs discovered their original works plagiarized, counterfeited on a

*Initial COMPLAINT for Civil RICO Remedies*

7

large scale of racketeering in approximately Early-March 2017.

23. During the investigation and research by Plaintiffs acting as "Private Attorney Generals, it was newly discovered that this was a large scale conspiracy on multiple Plaintiffs.

24. PLAINTIFF'S Plaintiff Terri Tucker contacted Plaintiff William James in February and compared the acts of plagiarism committed on each other's works and discovered the pattern of law proceedings and violations of law, cover-ups, briberies it was learned and investigated by the Plaintiff's that there was a pattern to the Intellectual Property plagiarisms; counterfeits and forgeries of their copyrighted works.

25. It was discovered by the Plaintiffs that a man named Melvin Childs who wrote in a book that Tyler Perry's first play tours was funded by drug dealers to fund the play that went on tour. This illegal operation laundered the drug money using the play and tour to put up a legal production studios in which served as a front for counterfeiting, forging and plagiarizing copyrighted works of hard working authors which resulted in the slavery of the copyright owners.

26. Tyler Perry publicly states he was beat by a man who was not his father, whereas as he changed his legal name at the age of 16 from Emmett Perry, Jr. to Tyler Perry Jr. We discovered he is still using several aliases of his birth name.

27. Oprah Winfrey discussed openly that she was abused sexually and

physically and this is another basis in which formed the relationship of the conspiracy between Tyler Perry and Oprah Winfrey to engage in racketeering of intellectual copyrighted properties to grow their legal business brand using slavery and counterfeit, manufacturing of forged goods using the studios as the manufacturing laboratories and Lionsgate as the distributers. Tyler Perry and Oprah Winfrey (OWN) conspired an exclusive agreement OWN, a private company working with a Public company Tyler Perry Studios worked together in an effort and succeeded to monopolize the television and film industry while plagiarizing peoples copyrighted protected intellectual property. Violating the Sherman Anti-Trust Act, U.S. Copyright Act, engaging in RICO Activities, See below: (See, Exhibit E, p.1)

a. Case #2:99-cv-04592-MK Melvin Childs v Primus et al  and Cartel member Tyler Perry, filed September 13, 1999, Jurisdiction was diversity; however Plaintiff failed to state a claim and case was dismissed without prejudice, Plaintiff provided a certificate in support of an Ex Parte Restraining Order. This shows Threats and retaliation by Tyler Perry.

b. Case# 2:02-cv-00175-JLG-MRA filed on February 26, 2002, Giant Eagle Inc. v Genesis Insurance Co, et. El, Tyler Perry was a Defendant. Diversity Case, in favor of Plaintiff on October 16, 2003.

*Initial COMPLAINT for Civil RICO Remedies*

c. Case# 1:06-cv-00640-GET filed in Atlanta, GA filed on March 20, 2006 by Rolleston et al v Tyler Perry inflicted fear on a Diversity-Torts-to Land case. A Temporary Restraining Order was requested on May 01, 2006 threats escalated and on May 09, 2006 an EMERGENCY Motion for Permanent Injunction, Emergency Motion for Temporary Restraining Order by Rolleston and on May 12, 2006 a Motion for Recusal, Motion for Temporary Restraining Order Motion for Permanent Injunction and Emergency Motion for Permanent Injunction Emergency Motion for Temporary Restraining Order Submitted to District Judge G. Ernest Tidwell. Defendant TP.

c. Case#2:07-cv-00200-LED-JDL was filed on May, 21 2007 – Donna West v. Perry, West stated Tyler Perry watched her play "Fantasy of a Black Woman" because he created a counterfeit and forged copy of the play under the title "Diary of a Mad Black Woman" which became a plagiarized film. There was a trial. (Texas) however the Plaintiff could not place Defendant in Texas and we have newly discovered evidence, Defendant Emmett "Buddy" Perry, Jr. was in Texas at the time Plaintiff West was performing her play.

d. January 2008 – Plaintiff Terri Tucker sent both Tyler Perry and

Oprah Winfrey her book to use for a Movie. The company Tyler Perry Studios stated he requested an additional copy September 2008. William James stated June-2011 he provided his screenplay to Oprah Winfrey's Senior Accountant Barbara Hunt who wanted the other 2 copyrighted intellectual works. Lisa Daniels stated she provided Oprah Winfrey with her screenplay which became a television show for Tyler Perry. This conspiracy shows a pattern of trafficking intellectual property over the past 10 years amongst Defendants in concert. Lionsgate is the trafficker, international pirater and illegal intellectual goods distributor nationally and worldwide.

e. Case # 2:09-cv-08712-JFW-VBK filed on November 25, 2009 "Madea Goes to Jail sued by the estate of Bertha V. James v The Tyler Perry Company; Tyler Perry crime syndicate cartel member and Lionsgate Entertainment Corp trafficker distributor of counterfeit and manufacturer of forged goods.; Lions Gate Films, Inc. copyright plagiarism (California). Ended settlement agreement. (Admission to Guilt)

f. Case#2:10-cv-00784-GW-RZ Filed on February 03, 2010 – Johnny Tyrone Stringfield v Tyler Perry et el copyright plaigerism of a Television show "Meet the Browns. (California) Counterfeited and

plagiarized a song for Tyler Perry Studios. On October 16, 2010 Settlement was reached. (Admission to Guilt)

g. Case# 2:11-cv-10099-UA-DUTY filed on December 06, 2011 Shamont Lyle Sapp v. Jamie Foxx and Tyler Perry; Tyler Perry Studios front for eliciting plagiarized intellectual property protected by copyrights registrations and Fox Broadcasting Network from an inmate. Case was Voluntarily Dismissed copyright plagiarism on May 10, 2012. (Settlement Admission to guilt or threatened to drop case)

h. Case# Whitehead v White & Case #5:12-cv-00399-RTH-MLH filed on February 10, 2012, L.L.P, et el $75,000,000.00. The Defendants were a multitude of people to include, Tyler Perry, the distributor of counterfeit goods Lionsgate and the Head Ring Leader Oprah Winfrey who orchestrates the illegal activity. 440 Civil Rights SCCA 14-31224 and SCCA, 15-30348.

i. Case # 3:12-cv-00559-HES-MCR filed on May 09, 2012 - Maressa M. Holt, Plaintiff, v. Tyler Perry a/k/a John Ivory (Alias),.(United States District Court, M.D. Florida, Jacksonville Division). June 14, 2012. (copyright plagiarism) (Florida). The writer states her short stories and plays were plagiarized by Tyler Perry operating under a false name John Ivory.

i. Case#2:12-cv-06629-HB filed on November 27, 2012- Terri Donald v Tyler Perry Studios and Lionsgate in (PA,) crime syndicates this case was out of compliance and defaulted pursuant to FR 12 & 55 answer was due by December 28, 2012 before the transfer from PA to New York on March 8, 2013. Attorney Simon Rosen served Tyler Perry and Lionsgate the same day the case was filed on November 27, 2012. The record is devoid of written request for extensions; request for transfer pursuant to 28 USC 1404(a) and any appearance by known attorney Tom J. Ferber. Oprah Winfrey initially received this book for the book club in 2008, Defendants signed an exclusive deal when case was dismissed 2013. Extortion and intimidation retaliation and threats were made to Plaintiffs attorney Simon Rosen. Enforcing Plaintiff in to slavery for working on the multimillion dollar plagiarized works. This RICO act violation also violates the Sherman Anti-trust Act since the companies refuse to allow writers to represent their own works and place the counterfeited works under registrations obtained from the copyrights offices in their names. Violating the competition Sherman Anti-Trust Act not allowing others to represent themselves and their own works, the conspiracy to defraud the government and laundering illegal funds gained to front legal businesses. (Audio Records Avail.)

*Initial COMPLAINT for Civil RICO Remedies*

13

j. Case# 2:12-cv-00139-RLM-PRC filed on April 24, 2013 William James v Perry et al, Tyler Perry, Tyler Perry Studios company was used to plagiarize and counterfeit a forgery of his playwright, and trafficked by Lions gate Entertainment distribution interstate wide. For the film Temptation – Confessions of a Marriage Counselor (Indiana) Plaintiff James states he provided a copy Senior accountant at the Oprah Winfrey Studios (Oprah) who smuggled the intellectual property across state lines to the business partner Tyler Perry and conspired to produce the counterfeit film into a movie without compensation to playwright author, enforcing Plaintiff in to slavery for working on the multimillion dollar plagiarized works. This RICO act violation also violates the Sherman Anti-trust Act since the companies refuse to allow writers to represent their own works and place the counterfeited works under registrations obtained from the copyrights offices in their names. Violating the competition Sherman Anti-Trust Act not allowing others to represent themselves and their own works, the conspiracy to defraud the government and laundering illegal funds gained to front legal businesses.

k. Case# 4:14-cv-11374-MAG-RSW filed April 3, 2014 Parables Entertainment LLC v Tyler Perry Studios et al and Harpo

Productions Inc. the two conspiring companies committed yet another act of copyright plagiarism – for the television show "The Haves and Have Not's." "Parables Entertainment" filed the lawsuit Thursday, April 3, in Flint U.S. District Court against Atlanta-based Tyler Perry Studios and the Oprah Winfrey-owned Harpo Productions over the show that airs on Winfrey's OWN television network. (Michigan-Flint) (Settlement-Admission to guilt.)

l. Case#1:14-cv-0261-RWS filed on July 16 2014, Ubiquitous Entertainment Studios v McPherson, Tyler Perry and Tyler Perry Studios. It was insinuated that Tyler Perry bribed an Official to underbid the company and obtained the facility, it was stated the technicality of failing to state a claim terminated the case.

m. Case#0:14-cv-04950-ADM-HB filed on December 08, 2014 by Selina Miller v Tyler Perry Production, Kanye West and Kim Kardasian. Breach of Contract. In the U.S. District Court St. Paul, MN. Neglect of Hollywood check (1 billion dollars) Wrong Jurisdiction and Plaintiff filed Forma Pauperis denied, personal injury for 100 million dollars.

n. Case #1:15-cv-01700-LMM-LTW filed on May 15, 2015 by Joshua Sole v Tyler Perry and Tyler Perry Studios, LLC and other known

*Initial COMPLAINT for Civil RICO Remedies*

conspirators Tyler Perry had inappropriate communications with an employee Joshua Sole and filed a Countersuit to cover his illegal operations and to prohibit him from communicating private information on the operations of the organized criminal activities. Case dismissed because of failure to serve and not because allegations were unfounded.

   n. Case#1:15-cv-03400-TWT filed on September 25, 2015 Terri Strickland v Tyler Perry, this case was appealed case#16-11601-AA awaiting a Rehearing and Rehearing En Banc showing Collateral Estoppel does not apply since he defaulted 4 times on the record according to FR 12 & 55.

   o. October 2016 – Lisa Daniels Madea Gets a Job (Atlanta, GA)

   p. Case#2:16-cv-00164-KS-JCG filed on October 11, 2016 by Otisa C. Strickland v Oprah Winfrey, and HARPO Studios (Hattiesburg, MS) for the television show "Iyanya Fix My Life" television show, Plaintiff was an attorney that shared her television show with Crime syndicate Oprah and she decided to enter into a settlement agreement in lieu of a voluntary dismissal and a compromise settlement on all matters of the claim on December 16, 2016. Oprah Winfrey

Due to the number of lawsuits and numerous years from 1992 through

*Initial COMPLAINT for Civil RICO Remedies*

current filed against the Cartel and Ring Leader Oprah Winfrey the exhibit will be attached exhibiting 95 separate lawsuits 10 which were Copyright intellectual property claims. ( See, Exhibit F, pp.3)

28. In 2008 Plaintiff Tucker provided a copy of the BAGF to the Oprah Winfrey book club and the Tyler Perry Studios. In 2013 Plaintiff William James provided a copy of the script "Lover's kill" to Oprah Winfrey. We found online an article that referred to a Lisa Daniels who stated she provided a copy of her work to Oprah Winfrey and in their conspiracy to defraud and counterfeit, Tyler Perry Studios is a front for his forged works.

29. Subsequent to the issuance of the copyright plagiarism suits against Defendants Tyler Perry and Oprah Winfrey the pattern of consecutive and continuous RICO violations go back as far as 1999 for Defendant Perry and 1992 for Defendant Winfrey the PLAINTIFF's filed notice and lawsuits on the copyrighted work, however the Defendants eluded the federal law imposing the RICO act by committing the crimes in various states against unknown, low income intellectual owners. The Tyler Perry Studios located at 541 10th Street SW, Atlanta GA 30318 served as a front for manufacturing the plagiarized work. In both instances the Plaintiff's stated the staff for Tyler Perry and Oprah Winfrey requested the Copyrighted Intellectual Property multiple times and

counterfeited as well as; commercially released the films "Good Deeds" in 2012 and "Temptations" 2013 stating to the general public it was written by defendant Tyler Perry. A nexus in the case is that both Plaintiffs have also provided copies to Oprah Winfrey at the Harpo Studios in Chicago, Illinois.

30. Defendants Company Tyler Perry Studios had distribution deal with Lions Gate Entertainment and Oprah Winfrey owned Oprah Winfrey Network on cable, the organized criminals monopolized the industry with their exclusive contract violating the Sherman Anti-trust act when Tyler Perry TV shows were the only sitcoms aired other than Oprah Winfrey's TV shows on prime time television cable broadcasting. Oprah is also using the distributor Lionsgate. Both Defendants films grossed over for the film "Good Deeds" $35,000,000 box office, international $553,386.00 and all DVD total sales were $13,116,810.00 released February 2012 and "Temptations" $51,975,354.00 box office, and all DVD total sales were $14,906,103.00. There were 8 Copyright plagiarisms filed against Tyler Perry and 15 Copyright plagiarism's cases filed against Oprah Winfrey. We believe that Oprah attempted to stop plagiarisms under her company and began to use Tyler Perry to continue the counterfeit of Intellectual Property.

31. The films is still being infringed upon to date as it is still being sold to

the general public and therefore Plaigerism there are no statute of limitations (SOL) on the RICO act.

32. Defendant is the owner of Tyler Perry Studios and ultimately owned by Emmett Perry, Jr. and is responsible for the actions of said company employees or owners. Defendant Oprah Winfrey Network (OWN) is a Public Company and both are engaging in organized crimes that have brought in up to 3 billion plus combined in revenues

   a. The last action by the PETITIONER William James the last action was on April 15, 2014 NORTHERN DISTRICT OF Indiana claim Case # 2:13-cv-00139-RLM-PRC and terminated January 02, 2014.

   b. The last action by the PETITIONER Tucker-Strickland in Appeals Court and was decided on March 30, 2017 to deny Rehearing in Banc, NORTHERN DISTRICT OF Georgia claim Case 1:15-cv-3400-WHP and 16-11601-AA.

## COUNT ONE: VIOLATION OF TITLE 17, UNITED STATES CODE 506(A) COPYRIGHT PLAIGERISMS (AGAINST DEFENDANTS)

1. Paragraphs 1 through 32 are inclusive, are incorporated by reference as though fully set forth herein and made a part hereof.

*Initial COMPLAINT for Civil RICO Remedies*

2. Subsequent to PLAINTIFF'S creation and copyrighting of "LK" and "BAGF" DEFENDANT'S Tyler Perry and Oprah Winfrey, having access to "LK" screenplay through accountant Barbara Hunt and "BAGF" book through the Tyler Perry Company, decided to plagiarize the works of these Plaintiff's and countless other Plaintiff's works counterfeiting the original work into a forgery copy that were illegally distributed internationally throughout the world digitally and through U.S. and other mailing companies without written permission or consent of the original owners. These and many other counterfeit intellectual properties aforementioned were used against the owners to enforce slavery for works unpaid violating the RICO ACT in a fashion of which they are organized crime laundering forged goods and drug money into a legal enterprise in which they use harassment, retaliation, threats, intimidation, selling of trade secrets, bribery and a host of other extortions to intimidate witnesses, counsels for Plaintiff's and anyone that opposes them in any way. Several settlement agreements were made by the Defendants on various cases attached as exhibits.

3. Accordingly said defendants are liable to plaintiff for copyright plagiarism pursuant to RICO ACT violating the rights of title 17 of the U.S. Code 501 through 513 and 18 US Code 2319.

*Initial COMPLAINT for Civil RICO Remedies*

WHEREFORE on count one, PLAINTIFF'S WILLIAM JAMES AND

TERRI V. TUCKER formerly (TERRI V. DONALD aka TLO-REDNESS

STRICKLAND) demands judgment in THEIR favor and against

DEFENDANT'S as follows:

a) For statutory damages $150,000.00 per PLAINTIFF, PER

DEFENDANT; pursuant to the RICO Act x3 $450,000.00

b) For actual damages of Court Cost, Expenses and Private Attorney Fees,

per PLAINTIFF, PER DEFNDANT; pursuant to the RICO Act x3.

c) For Restitution of Earnings from Counterfeit and Plagiarized

Copyrighted Intellectual Property all proceeds minus cost incurred to

produce illegal counterfeit forgeries of Owners works x3.

d) For such other relief as this Court may deem proper.

## COUNT TWO: ACCOUNTING AND CONSTRUCTIVE TRUST

4. Paragraphs 1 through 32, inclusive are incorporated by reference as

though fully set forth herein and made a part hereof

5. PLAINTIFFS is entitled to a full accounting in order to determine the

exact nature and amount of revenues generated, and accrued to

defendants pertaining to ("Temptations" and "Good Deeds"), said

revenues to be set aside and deposited in a separate bank account in

constructive trust for PLAINTIFFS for respective works.

*Initial COMPLAINT for Civil RICO Remedies*

WHEREFORE on Count Two, PLAINTIFF'S WILLIAM

JAMES AND TERRI V. TUCKER formerly known as (TERRI V.

DONALD-STRICKLAND aka TLO-REDNESS) demands judgment

in their favor and against all named Defendant's as follows:

a) For Tyler Perry and all (ALIASES), Tyler Perry Studios/Company

   and Lions Gate all subsidiaries of company to file a full accounting

   listing all gross revenues earned to on "Confessions and Good

   Deeds" earned in regard to the Film and Motion Pictures, Digital,

   Downloads, Contracts, Hotels, Retail/Wholesale, International and

   Domestic, Box Office, Video Rental Stores on respective films

   "Confessions and "Good Deeds".

b) For the imposition of a constructive trust in favor of PLAINTIFFS.

c) For such other relief as the Court may deem proper for acting as

   "PRIVATE ATTORNEY GENERALS".

## COUNT THREE: INJUNCTIVE RELIEF (AGAINST THE DEFENDANTS)

6. Paragraphs 1 through 32 inclusive, are incorporated by reference as

   though fully set forth herein and made part hereof.

7. PLAINTIFF'S Invoke Sherman Anti-Trust Act, the Hobbs Act, the U.S.

   Constitution, The Copyrights Act, The Constitution of Georgia, The

*Initial COMPLAINT for Civil RICO Remedies*

Federal Conspiracy Law and Defendants improper unlawful and repeated actions has caused, and, continues to cause irreparable damage to PLAINTIFFS Character, Film Career, Image, Name, Reputation, Ability to earn future revenues in this industry, emotional and mental distresses, physical distress, relationship distress, undue hardships in work and at home, time and attention from family and friends to divert to investigating and litigating for intellectual property counterfeited and plagiarized.   .

8. PLAINTIFFS are entitled to injunctive relief as set forth herein below:

9. PLAINTIFF is entitled to this Court's grant of injunctive relief.

WHEREFORE on Count Three, PLAINTIFF'S WILLIAM JAMES AND TERRI V. TUCKER formerly (TERRI V. DONALD STRICKLAND aka TLO-REDNESS) demands judgment in their favor and against DEFENDANTS as follows:

a) For the issuance of a permanent injunction requiring the DEFENDANTS to:

    i)    Change illegally obtained copyrights of "Confessions and Good Deeds" over to the respective owners of counterfeit and Plagiarized movies and transfer all rights and licenses with royalties to a trust for PLAINTIFF'S, defendants' must continue

*Initial COMPLAINT for Civil RICO Remedies*

23

to market unlawful materials for future Royalty payments to PLAINTIFF'S for copyrighted work; and whatever else the Court deems proper and just.

## COUNT FOUR: EXEMPLARY (PUNITIVE) DAMAGES (AGAINST THE DEFENDANTS)

10. Paragraphs 1 through 32 inclusive, are incorporated by reference as though fully set forth herein and made part hereof.

11. Pursuant to the Civil RICO act Remedies authorized by the Federal Statutes at 18 U.S.C. 1961 Plaintiff's request exemplary damages of $150,000,000.00 per Defendant for pain and suffering, defamation of character, blacklisting filmmakers in the known entertainment industry, financial hardships to keep up with cost of filings, medical and mental distress, attorney fees for Private Attorney Generals, fencing of property, distribution of counterfeited works, plaigerism, forgery, false copyright registrations.

> This is the purpose of this act to seek the eradication of an organized crime in the United States by strengthening the legal tools in this evidence in gathering process by establishing a new panel of prohibitions and by providing enhanced sanctions and the new remedies' to deal with the unlawful activities of those

*Initial COMPLAINT for Civil RICO Remedies*

engaged in organized crime and whatever this Court seems just and fair. Please see attached Plaintiff's Declatory Statements pursuant to Federal Rule 32 Rules of Evidence for all exhibits attached to this complaint.

12. Paragraphs 1 through 32 inclusive, are incorporated by reference as though fully set forth herein and made part hereof.

<u>RULE 7.1 (D) CERTIFICATE</u>

The Undersigned Pro Se Litigant certifies this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1 (B).

Respectfully Submitted,

April 3, 2017,

*William James* 4-3-2017

William James
PRIVATE ATTORNEY GENERAL
9100 South Drexel Ave
Chicago, Illinois 60619
Email: BJ255758@yahoo.com
Phone 773-990-9973

*Terri V. Tucker* April 3, 2017

Terri V. Tucker (aka)
Donald-Strickland
PRIVATE ATTORNEY GENERAL
1136 Joslin Path
Douglasville, GA 30134
terrilowe43@gmail.com
Phone: 347-705-2043

*Initial COMPLAINT for Civil RICO Remedies*

25

## SWORN DECLATORY STATEMENT

I , William James, Plaintiff and Private Attorney General attest and swear to the legitimacy of the belief of the claims made in this CIVIL RICO Act case against Defendants named in the above complaint. I attest that I and Plaintiff on this case performed research as well as provided copies of original documents in its truest form contained in the exhibits to this CIVIL RICO Complaint.

Signed April 3, 2017 _William James 4-3-2017_ .

I , Terri Tucker Aka Donald-Strickland, TLO-Redness, Plaintiff and Private Attorney General attest and swear to the legitimacy of the belief of the claims made in this CIVIL RICO Act case against Defendants named in the above complaint. I attest that I and Plaintiff on this case performed research as well as provided copies of original documents in its truest form contained in the exhibits to this CIVIL RICO Complaint.

Signed April 3, 2017 _Terri Tucker April 3, 2017_

## CERTIFICATE OF COMPLIANCE REQUIRED BY FRAP 32(A)(7)(C)

### CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).   This brief contains 4,766 words.

*Initial COMPLAINT for Civil RICO Remedies*

26

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume
limitation set forth in FRAP 32(a)(7)(B). This brief
uses a monospaced face and contains 544 lines of text.
25 pages, 4,766 words,150 paragraphs.

## CERTIFICATE OF SERVICE

Pursuant to O.C.G.A. 5-6-32 (2014), this is to certify that I, William

James and Terri Tucker have April 3, 2017 this day served the <u>Defendants</u>

through Marshalls to known addresses FOUND ONLINE.

Respectfully, submitted this 3 day of April, 2017.

Date Signed April 3, 2017

William James
PRIVATE ATTORNEY GENERAL
9100 South Drexel Ave
Chicago, Illinois 60619
Email: BJ255758@yahoo.com
Phone 773-990-9973

Terri V. Tucker (aka)
Donald-Strickland
PRIVATE ATTORNEY GENERAL
1136 Joslin Path
Douglasville, GA 30134
terrilowe43@gmail.com
Phone: 347-705-2043

*Initial COMPLAINT for Civil RICO Remedies*

27

DEFENDANTS
TYLER PERRY COMPANY
TYLER PERRY STUDIOS
TYLER PERRY
EMMETT PERRY, JR (ALL KNOWN AND UNKNOWN ALIASES)
ADDRESSES
4110 PACES FERRY RD N.W.
ATLANTA, GA 30327
TYLER PERRY STUDIOS
3300 CONTINENTAL COLONY PARKWAY SW
ATLANTA, GA 30331

OPRAH WINFREY
HARPO
OPRAH WINFREY NETWORK (OWN)
9150 WILSHIRE BLVD
BEVERLY HILLS, CA 90069
1041 N. FORMOSA AVE
WEST HOLLYWOOD, CA 90046

BARBARA HUNT
OPRAH WINFREY NETWORK (OWN)
9150 WILSHIRE BLVD
BEVERLY HILLS, CA 90069

LIONSGATE ENTERTAINMENT
2700 COLORADO AVE #200
SANTA MONICA, CA 90404

Filed With the:

UNITED STATES DISTRICT COURT NOTHERN DISTRICT OF
GEORGIA, ATLANTA DIVISION
CLERK OF THE COURT
75 Ted Turner Drive SW
Atlanta, GA 30303
Phone: 404 215 1655

*Initial COMPLAINT for Civil RICO Remedies*

# Civil RICO:   Points to Remember

by

Paul Andrew Mitchell, B.A., M.S.
Private Attorney General, Federal Witness
and Qualified Criminal Investigator


1.   The *Civil* RICO statute at <u>18 U.S.C. 1964</u> expressly authorizes <u>civil</u> remedies, in addition to any criminal remedies that also exist to prosecute organized crime.

2.   State courts have original jurisdiction to enforce the Civil RICO statute at <u>18 U.S.C. 1964</u>.  See <u>Tafflin v. Levitt</u> and <u>Lou v. Belzberg</u>, <u>Rice v. Janovich</u> and <u>Village at Camelback v. Carr</u>.

3.   The Civil Case Cover Sheet for the Superior Court of California shows "RICO" as a standard case category.

4.   A pattern of racketeering is expressly defined to mean only two (2) RICO "predicate acts" during any given 10-year period.  See <u>18 U.S.C. 1961(5)</u>.

5.   The federal statute at <u>18 U.S.C. 1961</u> itemizes all RICO predicate acts.  The most common are mail fraud, extortion, obstruction of justice, obstruction of a criminal investigation, and witness tampering or retaliation.

6.   Violations of State *and* federal laws both qualify as RICO predicate acts.  <u>18 U.S.C. 1961(1)(B)</u> itemizes a long list of federal offenses that qualify as predicate acts.

7.   Any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, obscene matter, controlled substances or extortion is also a RICO predicate act, if it is chargeable under State law and punishable by imprisonment for more than one year.  See <u>18 U.S.C. 1961(1)(A)</u>.

8.   The <u>Supremacy Clause</u> in the <u>U.S. Constitution</u> elevates all RICO statutes to the status of supreme Law, and resolves any conflicts with State laws in favor of the RICO statutes.  Whenever conflicts occur, State laws and State constitutional provisions have no standing ("*notwithstanding*").

9.   Congress intended the RICO statutes to be *liberally* construed.  See <u>84 Stat. 947</u>, Sec. 904, Oct. 15, 1970.  However, this <u>liberal construction rule</u> was never codified *anywhere* in <u>Title 18</u> of the U.S. Code, even though Title 18 *has* been enacted into positive law by Act of Congress.

10.  A specific Congressional objective is encouraging civil litigation to supplement government efforts to deter and penalize the practices

Exhibit A P.1 of 2

prohibited by the RICO statutes.

11.   Another objective of Civil RICO is to turn victims into prosecutors, "private attorneys general", dedicated to eliminating racketeering activity.  See <u>Rotella v. Wood</u>.

12.   Civil RICO specifically has a further purpose of encouraging potential private plaintiffs to *investigate* diligently.  <u>Rotella v. Wood</u>.

13.    Organized crime is a serious national problem for which public prosecutorial resources are deemed inadequate.  See <u>Agency Holding Corp. v. Malley-Duff & Associates</u>.

14.   Civil RICO authorizes triple damages (3x) to be awarded to successful private plaintiffs.  See <u>18 U.S.C. 1964(c)</u>.

15.   The provision for triple damages is justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better.  <u>Rotella v. Wood</u>.

16.   The *"private attorney general"* concept holds that a successful private party plaintiff is also entitled to recovery of his legal expenses, including attorney fees, if he has advanced the policy inherent in public interest legislation on behalf of a significant class of persons.  <u>Dasher v. Housing Authority of City of Atlanta</u>.

17.   A private attorney general may appear in court without the license to practice law that is required of all State Bar members.  See sections <u>6067</u> and <u>6068</u> of the California Business and Professions Code.

18.   A private attorney general may appear in court *"ex rel."* on behalf of the "United States" (*i.e.* the federal government), the State of California, the People of California or the People of the United States of America.   Confer at *"Ex relatione"* in <u>Black's Law Dictionary</u>, Sixth Edition.

19.   Civil RICO statutes are supplemented by 2 <u>Human Rights Treaties</u> -- the <u>Universal Declaration of Human Rights</u> and the <u>International Covenant on Civil and Political Rights</u> -- both of which are rendered supreme Law by virtue of the <u>Supremacy Clause</u> (just like the <u>Bill of Rights</u>).

20.    The latter Covenant's <u>Reservations</u> enacted by Congress expressly reserve original jurisdiction to State and local governments, to the end that their competent authorities may take appropriate measures for the fulfillment of the Covenant.

Exhibit A P. 2of 2

## PRIVATE ATTORNEYS GENERAL

Both statutes [RICO and Clayton Act] bring to bear the pressure of **"private attorneys general"** on a serious national problem for which public prosecutorial resources are deemed inadequate; the mechanism chosen to reach the objective in both the Clayton Act and RICO is the carrot of treble damages. See *Agency Holding Corp. v. Malley-Duff & Associates,* 107 Supreme Court Reporter 2759. See also 483 U.S. 143 at page 151 (1987).

In rejecting a significantly different focus under RICO, therefore, we are honoring an analogy that Congress itself accepted and relied upon, and one that promotes the objectives of civil RICO as readily as it furthers the objects of the Clayton Act. Both statutes share a common congressional objective of encouraging civil litigation to supplement Government efforts to deter and penalize the respectively prohibited practices. **The object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, "private attorneys general," dedicated to eliminating racketeering activity.** [2] *Id.*, at 187 (citing *Malley-Duff*, 483 U.S., at 151 ) (civil RICO specifically has a "further purpose [of] encouraging potential private plaintiffs diligently to investigate"). The provision for treble damages is accordingly justified by the expected benefit of suppressing racketeering activity, an object pursued the sooner the better. See *Rotella v. Wood et al.,* 528 U.S. 549 (2000).

The **"private attorney general"** concept holds that a successful private party plaintiff is entitled to recovery of his legal expenses, including attorney fees, if he has advanced the policy inherent in public interest legislation on behalf of a significant class

http://voidjudgements.net
http://voidjudgements.info
http://voidjudgments.com

ExHIBIT B-1of2

of persons. <u>Dasher v. Housing Authority of City of Atlanta</u>, Ga., D.C.Ga., 64 F.R.D. 720,

722. *See also* Equal Access to Justice Act.

*EXHIBIT B-2 of 2*

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**TXu 1-732-705**

**Effective date of
registration:**

April 9, 2010

---

## Title
**Title of Work:** Lovers Kill

**Previous or Alternative Title:** Man Scorn

## Completion/ Publication
**Year of Completion:** 2009

## Author
■     **Author:** William Charles James, dba William James

**Author Created:** script/play/screenplay

**Citizen of:** United States

**Year Born:** 1966

## Copyright claimant
**Copyright Claimant:** William Charles James

7425 Maple Street, Gary, IN., 46403, United States

## Certification
**Name:** William James

**Date:** April 7, 2010

---

ExhibIT C 1 of 3

**Registration #:**   TXU001732705
**Service Request #:**   1-397010096

William Charles James
7425 maple street
Gary, IN. 46403  United States

EXHIBIT C 2of3



Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Short Form TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TXu 1 – 354 – 127**

*TXU001354127*

TX   /   TXU

Effective Date of Registration

4 / 27 / 07

Application Received
APR 2 7 2007

Deposit Received
On APR 2 7 2007  TWO

Fee Received

*Amended by C.O., authority of Terri V. Donald by phone call on 8/30/07

Examined By
CC/

Correspondence ☐

TYPE OR PRINT IN BLACK INK. DO NOT WRITE ABOVE THIS LINE.

**1 Title of This Work:**
"Bad Apples Can Be Good Fruit" and "Yell A Little"

Alternative title or title of larger work in which this work was published:

**2 Name and Address of Author and Owner of the Copyright:**
Terri V. Donald Aka "Red'Ness" "Pseud"
501st Signal CO
Unit 15216 Box 83  APO, AP 96271

Nationality or domicile:
Phone, fax, and email:
Phone ( 708 ) 820-0379     Fax ( )
Email terridnid@yahoo.com

**3 Year of Creation:**
2006

**4 If work has been published, Date and Nation of Publication:**
a. Date _____ Month _____ Day _____ Year _____ (Month, day, and year all required)
b. Nation

**5 Type of Authorship in This Work:**
Check all that this author created.
☑ Text (includes fiction, nonfiction, poetry, computer programs, etc.)
☑ Illustrations
☑ Photographs
☑ Compilation of terms or data   PRE000000489

**6 Signature:**
Registration cannot be completed without a signature.
I certify that the statements made by me in this application are correct to the best of my knowledge.* Check one:
☑ Author   ☐ Authorized agent
*Terri V Donald*

**7 Name and Address of Person to Contact for Rights and Permissions:**
Phone, fax, and email:
☐ Check here if same as #2 above.
Phone ( )     Fax ( )
Email

**8**
Certificate will be mailed in window envelope to this address:
Name ▼
Terri V. Donald
Number/Street/Apt ▼
501st Signal CO Unit 15216 Box 83
City/State/Zip ▼
APO, AP 96271

**9**
Deposit account #
Name
Complete this space only if you have a Deposit Account in the Copyright Office.
DO NOT WRITE HERE   Page 1 of 1 pages

*17 USC § 506(e). Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

Form TX-Short   Rev: 11/2006   Print: 11/2006 – 14,000   Printed on recycled paper   U.S. Government Printing Office: xxxx-xxx-xxx/60,xxx

Exhibit C 3 of 3

Case 1:13-cv-01655-WHP  Document 2-1  Filed 11/27/12  Page 8

# United States v. Paramount Pictures, Inc.

From Wikipedia, the free encyclopedia

**United States v. Paramount Pictures, Inc.**, 334 US 131 (1948) (also known as the **Hollywood Antitrust Case of 1948**, the **Paramount Case**, the **Paramount Decision** or the **Paramount Decree**) was a landmark United States Supreme Court antitrust case that decided the fate of movie studios owning their own theatres and holding exclusivity rights on which theatres would show their films. It would also change the way Hollywood movies were produced, distributed, and exhibited. The Court held in this case that the existing distribution scheme was in violation of the antitrust laws of the United States, which prohibit certain exclusive dealing arrangements.

The case is important both in U.S. antitrust law and film history. In the former, it remains a landmark decision in vertical integration cases; in the latter, it is seen as the first nail in the coffin of the old Hollywood studio system.

## Contents

- 1 Background
- 2 Decision
    - 2.1 Douglas
    - 2.2 Frankfurter
- 3 Consequences
- 4 See also
- 5 References

## Background

The legal issues originated in the silent era, when the Federal Trade Commission began investigating film companies for potential violations under the Sherman

---

### United States v. Paramount Pictures, Inc.



**Supreme Court of the United States**

**Argued February 9–11, 1948**
**Decided May 3, 1948**

| | |
|---|---|
| **Full case name** | *United States v. Paramount Pictures, Inc. et al.* |
| **Citations** | 334 U.S. 131 (https://supreme.justi a.com/us/334/131/case.html) (*more*) <br> 68 S. Ct. 915; 92 L. Ed. 1260; 1948 U.S. LEXIS 2850; 77 U.S.P.Q. (BNA) 243; 1948 Trade Cas. (CCH) P62,244 |
| **Prior history** | Injunction granted, U.S. District Court (66 F.Supp. 323) |

**Holding**

Practice of block booking and ownership of theater chains by film studios constituted anti-competitive and monopolistic trade practices.

**Court membership**

**Chief Justice**
Fred M. Vinson

**Associate Justices**
Hugo Black · Stanley F. Reed
Felix Frankfurter · William O. Douglas
Frank Murphy · Robert H. Jackson
Wiley B. Rutledge · Harold H. Burton

**Case opinions**

| | |
|---|---|
| **Majority** | Douglas |
| **Concur/dissent** | Frankfurter |

Jackson took no part in the consideration or decision of the case.

**Laws applied**

EXHIBIT D   1of5

Antitrust Act of 1890.

Sherman Antitrust Act; 15 U.S.C. § 1 (https://ww
w.law.cornell.edu/uscode/text/15/1), 2

The major film studios owned the theaters where their
motion pictures were shown, either in partnerships or outright and
complete. Thus specific theater chains showed only the films
produced by the studio that owned them. The studios created the
films, had the writers, directors, producers and actors on staff
("under contract" as it was called), owned the film processing and
laboratories, created the prints and distributed them through the
theaters that they owned: In other words, the studios were vertically integrated, creating a de facto
oligopoly. By 1945, the studios owned either partially or outright 17% of the theaters in the country,
accounting for 45% of the film-rental revenue.

 Wikisource has original
text related to this article:
**United States v.
Paramount Pictures,
Inc.**

Ultimately, this issue of the studios' allegedly illegal trade practices led to all the major movie studios being
sued in 1938 by the U.S. Department of Justice.[1] As the largest studio, Paramount was the primary
defendant, but all of the other Big Five (Loew's (MGM), Warner Bros., 20th Century Fox, RKO Pictures)
and Little Three (Universal Studios, Columbia Pictures, United Artists) were named, as well as numerous
subsidiaries and executives from each company.[2] Separate cases were also filed against large independent
chains, including the 148-theater Schine.[3]

The federal government's case was settled with a consent decree in 1940,[4][5] which allowed the
government to reinstate the lawsuit if, by November 1943, it had not seen a satisfactory level of
compliance. Among other requirements, the consent decree included the following conditions:

1. The Big Five studios could no longer block-book short film subjects along with feature films (known
   as one-shot, or full force, block booking);
2. The Big Five studios could continue to block-book features, but the block size would be limited to
   five films;
3. Blind buying (buying of films by theater districts without seeing films beforehand) would now be
   outlawed and replaced with "trade showing," special screenings every two weeks at which
   representatives of all 31 theater districts in the United States could see films before they decided to
   book a film; and
4. The creation of an administration board to enforce these requirements.

The studios did not fully implement the consent decree, and in 1942 with Allied Theatre Owners proposed
an alternate "Unity Plan". They proposed booking larger blocks of theatres with the caveat of allowing
theaters to reject films.[6] This led to the formation of the Society of Independent Motion Picture Producers
(SIMPP),[6] which also filed a lawsuit against Paramount Detroit Theaters, the first major lawsuit of
producers against exhibitors. The government declined the Unity proposal and reinstated the 1943
lawsuit.[7] The case went to trial on October 8, 1945, one month and six days after the end of World War
II.[1] The case was decided in favor of the studios, and the government immediately appealed.

The case reached the U.S. Supreme Court in 1948; their verdict went against the movie studios, forcing all
of them to divest themselves of their movie theater chains.[8] This, coupled with the advent of television and
the attendant drop in movie ticket sales, brought about a severe slump in the movie business, a slump that
would not be reversed until 1972, with the release of *The Godfather*, the first modern blockbuster.

EXHIBIT D   2 of 5

The *Paramount* decision is a bedrock of corporate antitrust law, and as such is cited in most cases where issues of vertical integration play a prominent role in restricting fair trade.

# Decision

The Court ruled 7-1 in the government's favor, affirming much of the consent decree (Justice Robert H. Jackson took no part in the proceedings). William O. Douglas delivered the Court's opinion, with Felix Frankfurter dissenting in part, arguing the Court should have left all of the decree intact but its arbitration provisions.[8]

## Douglas

Douglas's opinion reiterated the facts and history of the case and reviewed the District Court's opinion, agreeing that its conclusion was "incontestable".[8] He considered five different trade practices addressed by the consent decree:

- *Clearances and runs*, under which movies were scheduled so they would only be showing at particular theatres at any given time, to avoid competing with another theater's showing;
- *Pooling agreements*, the joint ownership of theaters by two nominally competitive studios;
- *Formula deals, master agreements, and franchises*: arrangements by which an exhibitor or distributor allocated profits among theaters that had shown a particular film, and awarded exclusive rights to independent theatres, sometimes without competitive bidding;
- *Block booking*, the studios' practice of requiring theaters to take an entire slate of its films, sometimes without even seeing them, sometimes before the films had even been produced ("blind bidding"), and
- *Discrimination* against smaller, independent theaters in favor of larger chains.

Douglas let stand the District Court's sevenfold test for when a clearance agreement was a restraint of trade, as he agreed they had a legitimate purpose. Pooling agreements and joint ownership, he agreed, were "bald efforts to substitute monopoly for competition ... Clearer restraints of trade we cannot imagine."[8]:149 He allowed, however, that courts could consider how an interest in an exhibitor was acquired and sent some other issues back to the District Court for further inquiry and resolution. He set aside the lower court findings on franchises so that they might be reconsidered from the perspective of allowing competitive bidding. On the block booking question, he rejected the studios' argument that it was necessary to profit from their copyrights: "The copyright law, like the patent statutes, makes reward to the owner a secondary consideration".[8]:158 The prohibitions on discrimination he let stand entirely.

## Frankfurter

Frankfurter took exception to the extent to which his brethren had agreed with the studios that the District Court had not adequately explored the underlying facts in affirming the consent decree. He pointed to another recent Court decision, *International Salt Co. v. United States* that lower courts are the proper place for such findings of fact, to be deferred to by higher courts. Also, he reminded the Court that the District Court had spent fifteen months considering the case and reviewed almost 4,000 pages of documentary evidence: "I cannot bring myself to conclude that the product of such a painstaking process of adjudication as to a decree appropriate for such a complicated situation as this record discloses was an abuse of discretion."[8]:180 He would have modified the District Court decision only to permit the use of arbitration to resolve disputes.

EXHIBIT D  3 of 5

# Consequences

Movie studios previously charged low rents to exhibitors because they were owned by the studio. When the studios were forced to sell their theaters, the result was higher rental rates charged to exhibitors (rising from an average of approximately 35% to its current level of approximately 50%), so the studios could recoup their expenses. The inability to block-book an entire year's worth of movies caused studios to be more selective in the movies they made, resulting in higher production costs and dramatically fewer movies made. This caused studios to further raise the rates they charged theaters, since the volume of movies fell.

The court orders forcing the separation of motion picture production and exhibition companies are commonly referred to as the **Paramount Decrees**. Paramount Pictures Inc. was forced to split into two companies: the film company Paramount Pictures Corp. and the theater chain (United Paramount Theaters) which merged in 1953 with the American Broadcasting Company.

Consequences of the decision include:

- More independent producers and studios to produce their film product free of major studio interference.
- The beginning of the end of the old Hollywood studio system and its golden age.
- The weakening of the (Hays) Production Code, since it saw the rise of independent and "art house" theaters which showed foreign or independent films made outside of its jurisdiction.

Following the decision, and with the rise of television, the major studios felt that the loss of their exclusive theatre arrangements would reduce the opportunity to re-release product from their film libraries. Paramount, for example, sold its pre-1950 sound feature film library to MCA, which created EMKA (today Universal Television) to manage this library. Other studios, such as Warner Bros., also sold their classic back catalogs to other companies. By contrast, Walt Disney believed his film library was much more valuable than RKO had estimated it to be; in 1953, he formed a holding company that held rights to work he did prior to 1953 as well as distributed new material from his studio--that company became its own in-house distribution unit, Walt Disney Studios Motion Pictures. The growth of television in subsequent years has resulted in these supposedly "worthless" films earning billions of dollars in rentals from television stations and networks.

## See also

- *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946), where the Supreme Court held that major Hollywood distributors had engaged in an antitrust conspiracy preventing certain independent movie houses from showing first run films.
- *Buchwald v. Paramount*
- *Leibovitz v. Paramount Pictures Corp.*
- *Paramount Communications, Inc. v. QVC Network, Inc.*

## References

1. "The Hollywood Antitrust Case". 2005.
2. "List of Original Defendants in the Paramount Case". 2005.
3. "The Theater Monopoly Cases". 2005.
4. "Part 3: The Consent Decree of 1940". 2005.

EXHIBIT D   4 of 5

5. "SHOW BUSINESS: Consent Decree". *Time.* November 11, 1940. Retrieved May 27, 2010.
6. "Independents Protest the United Motion Picture Industry (1942)". 2005.
7. "The Government Reactivates the Paramount Case". 2005.
8. *United States v. Paramount Pictures, Inc.*, 334 U.S. 131 (https://supreme.justia.com/cases/federal/us/334/131/cas e.html) (May 3, 1948).

Retrieved from "https://en.wikipedia.org/w/index.php?
title=United_States_v._Paramount_Pictures,_Inc.&oldid=765540873"

Categories:  United States Supreme Court cases | United States antitrust case law | Paramount Pictures
| American film studios | Business ethics cases | Film production | History of film
| Hollywood history and culture | Media case law | 1948 in United States case law
| 1940s in American cinema | 1948 in American cinema | Film production companies of the United States
| United States Supreme Court cases of the Vinson Court

- This page was last modified on 15 February 2017, at 00:25.
- Text is available under the Creative Commons Attribution-ShareAlike License; additional terms may apply. By using this site, you agree to the Terms of Use and Privacy Policy. Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc., a non-profit organization.

EXHIBIT D   5 of 5

3/27/2017                                PACER Case Locator - View

 **PACER** Case Locator

**Civil Party Search**
Mon Mar 27 22:36:29 2017
18 records found

🎧 Browse Aloud

User: terridnld
Client:
Search: Civil Party Search Name Perry, Tyler All Courts Page: 1

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 1 Perry, Tyler (dft) | ohsdce | 2:2002-cv-00175 | 110 | 02/26/2002 | 04/14/2003 |
| 2 PERRY, TYLER (dft) | paedce | 2:1999-cv-04592 | 190 | 09/13/1999 | 09/14/1999 |
| 3 Perry, Tyler (dft) | txedce | 2:2007-cv-00200 | 820 | 05/21/2007 | 12/18/2008 |
| 4 Perry, Tyler (dft) | gandce | 1:2015-cv-03400 | 820 | 09/25/2015 | 03/24/2016 |
| 5 Perry, Tyler (dft) | mndce | 0:2014-cv-04950 | 190 | 12/08/2014 | 01/05/2015 |
| 6 Perry, Tyler (dft) | gandce | 1:2015-cv-01700 | 442 | 05/13/2015 | 02/23/2017 |
| 7 Perry, Tyler (dft) | lawdce | 5:2012-cv-00399 | 440 | 02/10/2012 | 05/16/2012 |
| 8 Perry, Tyler (dft) | laedce | 2:2006-cv-09611 | 820 | 11/06/2006 | 04/29/2009 |
| 9 Perry, Tyler (dft) | gandce | 1:2014-cv-02261 | 440 | 07/16/2014 | 10/07/2014 |
| 10 Perry, Tyler (dft) | inndce | 2:2013-cv-00139 | 820 | 04/24/2013 | 01/02/2014 |
| 11 Perry, Tyler (dft) | gandce | 1:2006-cv-00640 | 240 | 03/20/2006 | 08/15/2006 |
| 12 Perry, Tyler (dft) | flmdce | 3:2012-cv-00559 | 620 | 05/09/2012 | 01/14/2013 |
| 13 Perry, Tyler (dft) | flmdce | 3:2011-cv-01252 | 820 | 12/21/2011 | 01/03/2012 |
| 14 Perry, Tyler (dft) | cacdce | 2:2011-cv-10099 | 890 | 12/08/2011 | 12/27/2011 |
| 15 Perry, Tyler (dft) | cacdce | 2:2010-cv-00784 | 820 | 02/03/2010 | 10/21/2010 |
| 16 Perry, Tyler (dft) | arwdce | 4:2011-cv-04031 | 440 | 04/05/2011 | 12/08/2011 |
| 17 Perry, Tyler (dft) | cacdce | 2:2009-cv-08712 | 820 | 11/25/2009 | 07/19/2010 |
| 18 Perry, Tylerre C. (pet) | casdce | 3:2012-cv-02512 | 530 | 10/15/2012 | 08/16/2014 |

| | Receipt 03/27/2017 22:36:29 275101317 |
|---|---|
| User terridnld | |
| Client | |
| Description Civil Party Search | |
| Name Perry, Tyler All Courts Page: 1 | |
| Pages 1 ($0.10) | |

EXHIBIT E P. 1 of 1

3/25/2017                                      PACER Case Locator - View

 **PACER** Case Locator

**Browse Alou**

**Civil Party Search**
Sat Mar 25 07:40:35 2017
96 records found

User: terridnld
Client:
Search: Civil Party Search Name Winfrey, Oprah All Courts Page: 1

| | Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| 1 | WINFREY, OPRAH (dft) | dcdce | 1:2000-cv-02120 | 470 | 09/01/2000 | 12/13/2001 |
| 2 | Winfrey, Oprah (dft) | ilndce | 1:1994-cv-00523 | 895 | 02/03/1994 | 02/03/1994 |
| 3 | Winfrey, Oprah (dft) | moedce | 4:2003-cv-01067 | 550 | 08/01/2003 | 04/15/2005 |
| 4 | Winfrey, Oprah (dft) | nysdce | 1:2009-cv-08554 | 440 | 10/08/2009 | 10/08/2009 |
| 5 | Winfrey, Oprah (dft) | txndce | 2:1996-cv-00208 | 320 | 06/04/1996 | 02/27/1998 |
| 6 | Winfrey, Oprah (dft) | candce | 3:2000-cv-04734 | 440 | 12/20/2000 | 01/18/2001 |
| 7 | Winfrey, Oprah (dft) | ilndce | 1:1997-cv-00322 | 320 | 01/16/1997 | 12/08/1998 |
| 8 | Winfrey, Oprah (dft) | lawdce | 5:2012-cv-00398 | 440 | 02/10/2012 | 05/16/2012 |
| 9 | Winfrey, Oprah (dft) | nyndce | 9:2002-cv-01077 | 550 | 08/20/2002 | 02/27/2004 |
| 10 | WINFREY, OPRAH (dft) | paedce | 2:2010-cv-07257 | 550 | 12/13/2010 | 05/25/2011 |
| 11 | Winfrey, Oprah (dft) | casdce | 3:2011-cv-02712 | 890 | 11/21/2011 | 12/12/2011 |
| 12 | Winfrey, Oprah (dft) | ilndce | 1:2004-cv-05813 | 440 | 09/03/2004 | 02/15/2005 |
| 13 | Winfrey, Oprah (obj) | miwdce | 2:1999-cv-00130 | 440 | 07/13/1999 | 10/22/1999 |
| 14 | Winfrey, Oprah (dft) | nysdce | 1:2008-cv-08653 | 820 | 10/09/2008 | 10/31/2008 |
| 15 | Winfrey, Oprah (condft) | txndce | 2:1996-cv-00208 | 320 | 06/04/1996 | 02/27/1998 |
| 16 | Winfrey, Oprah (dft) | candce | 4:2001-cv-00586 | 440 | 02/05/2001 | 02/15/2001 |
| 17 | Winfrey, Oprah (dft) | ilndce | 1:1997-cv-04124 | 820 | 06/06/1997 | 06/10/1997 |
| 18 | Winfrey, Oprah (dft) | lawdce | 1:2012-cv-02139 | 440 | 08/09/2012 | 11/20/2012 |
| 19 | Winfrey, Oprah (dft) | nyndce | 9:2006-cv-00812 | 550 | 06/29/2006 | 02/29/2008 |
| 20 | Winfrey, Oprah (dft) | scdce | 3:2012-cv-00957 | 440 | 04/05/2012 | 05/21/2012 |
| 21 | Winfrey, Oprah (dft) | candce | 3:2008-cv-00079 | 550 | 01/07/2008 | 01/16/2008 |
| 22 | Winfrey, Oprah (dft) | ilndce | 1:1999-cv-05993 | 890 | 09/10/1999 | 10/13/1999 |
| 23 | Winfrey, Oprah (dft) | madce | 4:2000-cv-40196 | 320 | 10/30/2000 | 07/17/2002 |
| 24 | Winfrey, Oprah (dft) | nysdce | 1:1994-cv-05950 | 440 | 08/17/1994 | 10/20/1994 |
| 25 | Winfrey, Oprah (dft) | scdce | 6:2012-cv-03221 | 440 | 11/08/2012 | 01/14/2013 |
| 26 | Winfrey, Oprah (dft) | caedce | 2:1998-cv-01341 | 550 | 07/13/1998 | 08/03/1998 |
| 27 | Winfrey, Oprah (dft) | hidce | 1:2008-cv-00495 | 440 | 10/31/2008 | 11/07/2008 |
| 28 | Winfrey, Oprah (dft) | kywdce | 3:2010-cv-00337 | 440 | 05/11/2010 | 06/07/2010 |
| 29 | Winfrey, Oprah (dft) | nyedce | 1:2003-cv-04153 | 440 | 08/26/2003 | 01/30/2004 |
| 30 | WINFREY, OPRAH (dft) | paedce | 2:2008-cv-04884 | 320 | 10/10/2008 | 03/24/2010 |
| 31 | Winfrey, Oprah (dft) | caedce | 2:2007-cv-02586 | 320 | 12/03/2007 | 02/10/2009 |
| 32 | Winfrey, Oprah (cc) | ilndce | 1:1999-cv-05367 | 820 | 08/17/1999 | 08/16/2000 |
| 33 | Winfrey, Oprah (dft) | laedce | 2:2008-cv-04700 | 440 | 10/21/2008 | 06/10/2009 |
| 34 | Winfrey, Oprah (dft) | nyedce | 2:2010-cv-04350 | 440 | 09/23/2010 | 01/19/2011 |
| 35 | WINFREY, OPRAH (dft) | paedce | 2:2010-cv-05855 | 820 | 10/26/2010 | 03/18/2011 |
| 36 | Winfrey, Oprah (dft) | caedce | 2:1996-cv-00220 | 550 | 02/02/1996 | 04/05/1996 |
| 37 | Winfrey, Oprah (dft) | gandce | 1:2014-cv-03518 | 360 | 10/31/2014 | 12/23/2014 |
| 38 | WINFREY, OPRAH (dft) | insdce | 3:2008-cv-00049 | 440 | 04/10/2008 | 04/18/2008 |
| 39 | Winfrey, Oprah (dft) | nvdce | 2:2012-cv-00424 | 440 | 03/14/2012 | 12/03/2012 |
| 40 | WINFREY, OPRAH (dft) | paedce | 2:2006-cv-01055 | 550 | 03/09/2006 | 07/26/2006 |
| 41 | Winfrey, Oprah (dft) | arwdce | 4:2011-cv-04031 | 440 | 04/05/2011 | 12/08/2011 |
| 42 | WINFREY, OPRAH (dft) | flsdce | 1:2007-cv-00187 | 440 | 09/28/2007 | 10/06/2008 |
| 43 | Winfrey, Oprah (dft) | ilndce | 1:2007-cv-04192 | 550 | 07/25/2007 | 08/17/2007 |
| 44 | Winfrey, Oprah (dft) | nddce | 3:1994-cv-00063 | 360 | 05/26/1994 | 11/09/1994 |
| 45 | Winfrey, Oprah (dft) | nywdce | 1:2014-cv-00594 | 442 | 07/22/2014 | 09/25/2014 |
| 46 | Winfrey, Oprah (dft) | utdce | 2:1999-cv-00135 | 440 | 03/05/1999 | 09/16/1999 |
| 47 | Winfrey, Oprah (dft) | cacdce | 2:2015-cv-04225 | 440 | 06/05/2015 | 06/16/2015 |
| 48 | Winfrey, Oprah (dft) | gandce | 1:2007-mi-00386 | 440 | 11/30/2007 | 06/11/2009 |
| 49 | Winfrey, Oprah (dft) | inndce | 3:2006-cv-00309 | 555 | 05/11/2006 | 06/02/2006 |
| 50 | Winfrey, Oprah (dft) | nvdce | 3:2002-cv-00248 | 440 | 04/30/2002 | 08/15/2002 |
| 51 | WINFREY, OPRAH (dft) | paedce | 2:2004-cv-04873 | 440 | 10/18/2004 | 11/29/2004 |
| 52 | Winfrey, Oprah (dft) | azdce | 2:2004-cv-01540 | 440 | 07/28/2004 | 11/17/2004 |
| 53 | Winfrey, Oprah (dft) | flsdce | 1:2014-mc-20322 | 890 | 01/27/2014 | 02/20/2014 |
| 54 | Winfrey, Oprah (dft) | ilndce | 1:2007-cv-05984 | 550 | 10/23/2007 | 10/31/2007 |

Receipt 03/25/2017 07:40:35 274570500

User terridnld
Client
Description Civil Party Search
Name Winfrey, Oprah All Courts Page: 1
Pages 1 ($0.10)

EXHIBIT F P.1of3

3/25/2017                                      PACER Case Locator - View



🎧 Browse Alou

**Civil Party Search**
Sat Mar 25 07:40:35 2017
96 records found

User:  terridnid
Client:
Search:  Civil Party Search Name Winfrey, Oprah All Courts Page: 2

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 55 Winfrey, Oprah (dft) | nedce | 8:2009-cv-00145 | 840 | 04/22/2009 | 10/21/2009 |
| 56 Winfrey, Oprah (dft) | okedce | 6:2009-cv-00274 | 550 | 07/14/2009 | 07/12/2011 |
| 57 Winfrey, Oprah (dft) | vaedce | 2:2010-cv-00182 | 440 | 04/20/2010 | 05/18/2010 |
| 58 Winfrey, Oprah (dft) | cacdce | 2:2015-cv-03564 | 890 | 05/12/2015 | 05/04/2018 |
| 59 WINFREY, OPRAH (dft) | gamdce | 4:2012-cv-00166 | 440 | 07/05/2012 | 07/30/2012 |
| 60 Winfrey, Oprah (pla) | ilndce | 1:1992-cv-02087 | 320 | 03/26/1992 | 05/01/1992 |
| 61 WINFREY, OPRAH (dft) | njdce | 2:2011-cv-04360 | 840 | 07/28/2011 | 11/03/2011 |
| 62 WINFREY, OPRAH (dft) | paedce | 2:2004-cv-04411 | 440 | 09/17/2004 | 09/29/2004 |
| 63 Winfrey, Oprah (dft) | cacdce | 2:2011-cv-03539 | 820 | 04/25/2011 | 05/17/2011 |
| 64 WINFREY, OPRAH (dft) | gamdce | 4:2012-cv-00046 | 440 | 02/27/2012 | 03/30/2012 |
| 65 Winfrey, Oprah (dft) | ilndce | 1:2008-cv-06872 | 190 | 12/02/2008 | 12/05/2008 |
| 66 WINFREY, OPRAH (dft) | njdce | 2:2001-cv-03705 | 555 | 08/06/2001 | 09/30/2002 |
| 67 Winfrey, Oprah (dft) | okedce | 6:2010-cv-00044 | 550 | 02/09/2010 | 05/06/2010 |
| 68 Winfrey, Oprah Gail (res) | caedce | 2:2014-cv-01768 | 470 | 07/25/2014 | 10/22/2014 |
| 69 Winfrey, Oprah (dft) | casdce | 3:1998-cv-01423 | 550 | 08/05/1998 | 09/09/1998 |
| 70 Winfrey, Oprah (dft) | ilndce | 1:2002-cv-07071 | 320 | 10/02/2002 | 02/05/2003 |
| 71 Winfrey, Oprah (dft) | madce | 1:2006-cv-12252 | 820 | 12/18/2006 | 03/14/2007 |
| 72 Winfrey, Oprah (dft) | nysdce | 1:2007-cv-06040 | 820 | 06/28/2007 | 12/09/2009 |
| 73 Winfrey, Oprah (dft) | tnwdce | 2:2008-cv-02342 | 440 | 05/22/2008 | 11/26/2008 |
| 74 Winfrey, Oprah (dft) | alndce | 2:2007-cv-02093 | 440 | 11/16/2007 | 02/22/2008 |
| 75 WINFREY, OPRAH (dft) | dcdce | 1:2015-cv-00778 | 440 | 05/26/2015 | 05/26/2015 |
| 76 Winfrey, Oprah (dft) | ilndce | 1:2007-cv-03706 | 370 | 07/02/2007 | 09/14/2007 |
| 77 Winfrey, Oprah (dft) | ncwdce | 3:2012-cv-00060 | 440 | 02/02/2012 | 02/08/2012 |
| 78 Winfrey, Oprah (dft) | nywdce | 1:2002-cv-00764 | 550 | 10/31/2002 | 02/05/2003 |
| 79 Winfrey, Oprah (dft) | txndce | 2:1998-cv-00151 | 380 | 04/24/1998 | 08/27/2002 |
| 80 Winfrey, Oprah (dft) | caedce | 2:2002-cv-02106 | 550 | 09/25/2002 | 12/10/2002 |
| 81 Winfrey, Oprah (dft) | gamdce | 1:2010-cv-04202 | 440 | 12/27/2010 | 07/22/2011 |
| 82 WINFREY, OPRAH (dft) | insdce | 1:2006-cv-00417 | 555 | 03/13/2006 | 05/08/2006 |
| 83 Winfrey, Oprah (dft) | nvdce | 2:2007-cv-00515 | 440 | 04/18/2007 | 12/03/2007 |
| 84 WINFREY, OPRAH (dft) | paedce | 2:2005-cv-04750 | 360 | 09/02/2005 | 10/05/2005 |
| 85 Winfrey, Oprah (dft) | almdce | 2:2010-cv-00608 | 370 | 07/14/2010 | 11/18/2010 |
| 86 WINFREY, OPRAH (dft) | dcdce | 1:2012-cv-01932 | 890 | 11/29/2012 | 11/29/2012 |
| 87 Winfrey, Oprah (dft) | ilndce | 1:2007-cv-02431 | 440 | 05/02/2007 | 05/15/2007 |
| 88 Winfrey, Oprah (dft) | masdce | 2:2016-cv-00164 | 820 | 10/11/2016 | 12/16/2018 |
| 89 Winfrey, Oprah (dft) | nysdce | 1:2016-cv-03626 | 550 | 05/13/2016 | 05/13/2016 |
| 90 Winfrey, Oprah (dft) | txndce | 2:1997-cv-00147 | 320 | 04/16/1997 | 03/23/1998 |
| 91 Winfrey, Oprah (dft) | akdce | 3:2011-cv-00182 | 890 | 09/13/2011 | 09/21/2011 |
| 92 WINFREY, OPRAH (dft) | dcdce | 1:2009-cv-01438 | 820 | 07/31/2009 | 07/31/2009 |
| 93 Winfrey, Oprah (dft) | ilndce | 1:1999-cv-05367 | 820 | 08/17/1999 | 08/16/2000 |
| 94 Winfrey, Oprah (dft) | mowdce | 4:2003-cv-00498 | 540 | 06/06/2003 | 06/30/2003 |
| 95 Winfrey, Oprah (dft) | nysdce | 1:2011-cv-07875 | 840 | 11/04/2011 | 03/09/2015 |
| 96 Winfrey, Oprah (dft) | txndce | 2:1996-cv-00233 | 320 | 06/21/1996 | 03/23/1998 |

Receipt 03/25/2017 07:41:20 274570522

User  terridnid
Client
Description Civil Party Search
Name Winfrey, Oprah All Courts Page: 2
Pages 1 ($0.10)

EXHIBIT F P.2 OF 3

PACER Case Locator - View

 **PACER**
**Case Locator**

**Browse Aloud**

**Civil Party Search**
Sat Mar 25 07:40:35 2017
10 records found

User:  terridnid
Client:
Search:  Civil Party Search Name Winfrey, Oprah All Courts Page: 1 NOS: 820

| Party Name ▼ | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|
| 1 Winfrey, Oprah (dft) | nysdce | 1:2008-cv-08653 | 820 | 10/09/2008 | 10/31/2008 |
| 2 Winfrey, Oprah (dft) | ilndce | 1:1997-cv-04124 | 820 | 06/06/1997 | 06/10/1997 |
| 3 Winfrey, Oprah (cc) | ilndce | 1:1999-cv-05387 | 820 | 08/17/1999 | 08/16/2000 |
| 4 WINFREY, OPRAH (dft) | paedce | 2:2010-cv-05655 | 620 | 10/26/2010 | 03/18/2011 |
| 5 Winfrey, Oprah (dft) | cacdce | 2:2011-cv-03539 | 820 | 04/25/2011 | 05/17/2011 |
| 6 Winfrey, Oprah (dft) | madce | 1:2006-cv-12252 | 820 | 12/18/2006 | 03/14/2007 |
| 7 Winfrey, Oprah (dft) | nysdce | 1:2007-cv-06040 | 820 | 08/26/2007 | 12/09/2009 |
| 8 Winfrey, Oprah (dft) | mssdce | 2:2016-cv-00164 | 820 | 10/11/2016 | 12/16/2016 |
| 9 WINFREY, OPRAH (dft) | dcdce | 1:2009-cv-01438 | 820 | 07/31/2009 | 07/31/2009 |
| 10 Winfrey, Oprah (dft) | ilndce | 1:1999-cv-05387 | 820 | 08/17/1999 | 06/16/2000 |

Receipt 03/25/2017 07:42:03

User terridnid
Client
Description Civil Party Search
Name Winfrey, Oprah All Courts Page: 1 NOS: 820

You have previously been billed for this page.

Pages 1 ($0.00)

EXHIBIT F P. 3 of 3

# PARTNERSHIP AGREEMENT FOR THE RICO ACT CIVIL LAWSUIT AS CO-PLAINTIFFS

Between

**[WILLIAM JAMES]**

and

**[TERRI V. TUCKER]**

Effective as of **[APRIL]**, 3 20**[17]**

## PARTNERSHIP AGREEMENT

**THIS PARTNERSHIP AGREEMENT** effective as of the 3RD day of April, 2017.

**BETWEEN:**

[●], Plaintiffs William James and Terri V. Tucker[●].

(hereinafter **"William James"** Plaintiff 1)

OF THE FIRST PART,

- and -

(hereinafter **"Terri V. Tucker"** Plaintiff 2)

OF THE SECOND PART.

**WHEREAS** Plaintiff 1 and Plaintiff 2 entered into the Partnership (for a lawsuit filed under the Civil RICO Act under Diversity) effective as of April1, 3 2017 on the terms and conditions hereinafter set forth;

**AND WHEREAS** from and following the Partnership acquired certain assets through the lawsuit filed on April 3, 2017 in a Civil RICO Lawsuit suing multiple Parties:

1 Barbara Hunt
2 Harpo
3 Lionsgate Entertainment
4 Oprah Winfrey Network (OWN)
5 Oprah Winfrey
6 Tyler Perry Company
7 Tyler Perry Studios (TPS)
8 Tyler Perry aka Emmett Perry Jr. aka Emmett J. Perry aka Emmett M. Perry Aka Emmbre R. Perry aka Emmitt R. Perry aka Emmett T. Perry aka Willie M. Perry aka Emmett Ty Perry aka Emmett Perry aka Tyler E Perry aka Emmbre R Perry

- 2 -

Aka Emmitt Perry, Jr. aka
Buddy aka John Ivory;

**NOW THEREFORE THIS AGREEMENT WITNESSETH** that in consideration of
the winnings, settlement or awards and the mutual covenants, agreements and conditions herein
contained, it is hereby covenanted, agreed and declared by and among the Partners (as defined
herein) as follows:

## ARTICLE 1 – INTRODUCTION

**1.1     Definitions.**

In this Agreement (CIVIL RICO-DIVERSITY), unless there is something in the subject
matter or context inconsistent therewith, the following terms shall have the respective meanings
ascribed below:

(a)     **"Awards"** means funds received from lawsuit in the form of Settlement of any
party or any defendant, arbitration, awards by the court

(b)     **"Agreement", "this Agreement", "hereto", "herein", "hereby", "hereunder"**
and similar expressions refer to this Agreement and not to any particular Article,
Section or other portion hereof, and include any and every instrument
supplemental or ancillary to or in implement hereof;

(c)     **"Docket"** means any document on the record of the Joint lawsuit

(d)     **"Effective Date"** means April 3, 2017;

(e)     **"Case"** means Duration of the case

(f)     **"Partner"** means any one of  Plaintiff 1 and Plaintiff 2 are partners admitted
pursuant to the provisions of this Agreement, **"Partners"** means all of them, and
the **"Partnership"** means the partnership established by this Agreement; and

(g)     **"Person"** means any individual, firm, corporation, partnership, joint venture,
trustee or trust, government or agency thereof, unincorporated association, or
other entity and pronouns have a similarly extended meaning.

## ARTICLE 2 – FORMATION OF PARTNERSHIP

**2.1     Establishment.**

Subject to the terms and conditions hereof, the parties hereto agree to carry on the
Business in partnership for the Duration of the CIVIL RICO Diversity Lawsuit,

(a)     the date on which the Partnership is voluntarily dissolved by unanimous
agreement of the Partners once an agreement is signed with the Defendants; or

(b)     the date on which the Court renders a decision of law.

**2.2     Name.**

The name of the Partnership shall be "**[Plaintiffs]**" and/or such other name or names as the Partners may from time to time agree upon in writing and no party shall carry on business under such name except as a Partner of the Partnership.

## ARTICLE 3 GENERAL

**2.3     Settlements, Awards, Winnings and Discussions**

The Plaintiffs agree that neither party shall discuss information pertaining to the case with any of the Defendants or attorneys for the Defendants without the Physical or Telephonic Presence of both parties. Both parties must agree on any settlement amount and agree to divide any awards, winning or settlement in half equally 50%.

**IN WITNESS WHEREOF**  the parties hereto have duly executed this Agreement this day of **[●]**, to be effective as of the Effective Date in accordance with Section 6.5 of this Agreement.

**[●]**

Per: _William James   4-3-2017_

Name: William James
9100 South Drexel Ave
Chicago, Illinois 60619
773-990-9373

Title: Plaintiff 1

Per: _Terri V. Tucker   4/3/2017_

Name: Terri V. Tucker
1136 Joslin Path
Douglasville, GA 30134
347-705-2043

Title: Plaintiff 2

- 4 -

**Witness:**

Per: _____   4/3/17

Name: Emanuel A. Tucker, Jr.
1136 Joslin Path
Douglasville, GA 30134
347-995-8097
Title: Witness

_____

## INDEX

Civil Cover Sheet……………………………………………………..1-2

Initial Complaint for Civil RICO Remedies………………………….1-25

Sworn Declatory Statement……………………………………………..26

Certificate of Compliance Required By FRAP 32(A)(7)(C)……………..26-27

Certificate of Service……………………………………………….27-28

Civil Rico Supreme Law, Exhibit A pp.2……………………………..1-2

Private Attorney General, Exhibit B pp. 2…………………………….1-2

Certificate of Copyright Registration James & Tucker, Exhibit C pp. 3…..1-3

Supreme Court Case United States v. Paramount Pic. Exhibit D pp. 5…….1-5

Pacer Civil Case Locator-Tyler Perry, Exhibit E p.1………………………..1

Pacer Civil Case Locator-Oprah Winfrey, Exhibit F pp.3…………………..1-3

William James  4/3/2012
William James
PRIVATE ATTORNEY GENERAL
9100 South Drexel Ave
Chicago, Illinois 60619
Email: BJ255758@yahoo.com
Phone 773-990-9973

Terri V. Tucker (aka)
Donald-Strickland
PRIVATE ATTORNEY GENERAL
1136 Joslin Path
Douglasville, GA 30134
terrilowe43@gmail.com
Phone: 347-705-2043