CORRECTED COPY

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 1 8 2025

KEVIN P. WEIMER, Clerk
By_____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

William James and
Terri Tucker (Lowe),
Plaintiffs,

v.

Barbara Hunt, Tyler Perry,
Oprah Winfrey, et al., and
Judge Thomas W. Thrash, Jr.
Defendants.

Civil Action No. 1:17-cv-01181-TWT

Corrected Exhibit 2 Jt. Decl'r Statement of
the Facts in Support of Plaintiffs' Joint
Motion to Vacate Judgment, Reopen Case,
and Enter Default Judgment for Judicial
Misconduct, Fraud on The Court, And
Denial of Due Process Under Fed. R. Civ. P.
60(B)(1)-(6), (D)(3)

Judge Thomas W. Thrash, Jr. U.S.D.J.

**CORRECTED EXHIBIT 2 - JOINT DECLARATION - STATEMENT OF THE FACTS
OF WILLIAM JAMES AND TERRI TUCKER (LOWE) IN SUPPORT OF PLAINTIFFS'
JOINT MOTION TO VACATE JUDGMENT, REOPEN CASE, AND ENTER DEFAULT
JUDGMENT, JUDICIAL MISCONDUCT, FRAUD ON THE COURT, AND DENIAL OF
DUE PROCESS UNDER FED. R. CIV. P. 60(b)(1)-(6), (d)(3)**

Civil Action No. 1:17-cv-01181-TWT

We, William James and Terri Tucker (Lowe), declare that date and 1 document and exhibit were

corrected and that we believe all other dates and information is correct as follows:

1.      We are the plaintiffs in this action. We make this declaration based on our personal

        knowledge and review of the records in this case. If called as witnesses, we could and would

        testify competently to the facts set forth herein.

2.      We, William James and Terri Tucker (Lowe), are the plaintiffs in the above-captioned action

        against Barbara Hunt, Tyler Perry, Oprah Winfrey, and others. We submit this joint

        declaration in support of our Plaintiffs' Joint Motion to Vacate Judgment, Reopen Case, and

Enter Default Judgment, as well as for relief based on judicial misconduct, fraud on the court, and denial of due process under Fed. R. Civ. P. 60(b)(1)-(6), (d)(3).

This action was initially assigned to Judge Richard W. Story. Following Defendants' Motion to Transfer (Doc. 31) (Ex. 13), the case was reassigned to Chief Judge Thomas W. Thrash, who is also named as a defendant in this matter. The conduct and rulings of both judges are central to the procedural history and form the basis for the relief sought herein.

Judge Story transferred the case to Judge Thrash based on Defendants' erroneous assertion in (Doc. 31) that the present Civil RICO complaint was duplicative of Plaintiff Tucker's prior copyright infringement action previously presided over by Judge Thrash, in which Defendant Tyler Perry was a party. It was apparent that Judge Thrash did not review the current complaint, nor did Judge Story review the prior complaints. Defendants continued to mischaracterize the Civil RICO complaint in their Motion to Quash (Doc. 52, Ex. 15), and Judge Thrash promptly granted relief based on this mischaracterization, treating the current case as a copyright infringement matter rather than a RICO action. (See, Motion Rule 60(b) II. Statement of the Facts and Procedural Background, p. 12)

Plaintiffs then investigated the relationship between Judge Thrash and Defendants, noting a possible connection involving a television show produced by Tyler Perry featuring an actress named Annie Thrash and thematic parallels to Judge Thrash's biography (both referencing Alabama and a return from the North). The lack of public information about the actress, combined with biographical similarities, raised concerns of a potential conflict of interest. Based on these findings and Judge Thrash's actions, Plaintiffs added Judge Thrash as a defendant, alleging he aided and abetted Defendants' efforts to mischaracterize the case and avoid adjudication on the proper merits. Plaintiffs maintain that the claims and causes of

action in this case are distinct and not remotely the same as those in the prior copyright action, and that the reassignment and subsequent rulings were prejudicial and unsupported by the record. (SOF ¶ 37)

## 3. Mischaracterization of RICO Claims and Secret Reassignment Based on Defendants' Motion (Doc. 31)

On or about May 11, 2017, Defendants filed a Motion to Transfer (Doc. 31), representing to the Court that Plaintiffs' civil RICO action was duplicative of a prior copyright case. Based on our personal knowledge and review of the pleadings, this was a material misrepresentation: the RICO claims in this action are legally and factually distinct, relying on criminal copyright infringement as a predicate act and a broader pattern of racketeering activity. Defendants' mischaracterization in (Doc. 31, Ex. 13) was relied upon to justify transferring the case from Judge Story to Judge Thrash, who is a named defendant.

Plaintiffs were not provided notice or an opportunity to object to this reassignment. After the fact, Plaintiffs discovered via a certified docket (see Ex. 8 ¶¶ 1-7) that certain docket entries—including the termination of (Doc. 31, Ex. 13) and the order effectuating reassignment (Order 71, Ex. 21)—were marked "court-only" and not visible to Plaintiffs as pro se litigants. This lack of transparency and notice prevented Plaintiffs from responding to or challenging these actions.

Attached as (Exhibit 8 - Certified Copy of CM/ECF-GA Northern District Court Docket Sheet (Court Only ¶¶ 1-17)) is a true and correct copy of the Certified Docket Sheet for this action, obtained from the Clerk of Court on August 31, 2018, demonstrating the existence of "court-only" docket entries, including the non-public termination of (Doc. 31) and the reassignment order (Order 71, Ex. 21). Attached as (Doc. 31, Ex.13) is a true and correct

copy of Defendants' Motion to Transfer (Doc. 31 Ex. 13), which mischaracterizes Plaintiffs' RICO claims as duplicative of prior copyright litigation, an assertion that is factually and legally incorrect. Pattern of Defense Conduct (Doc 42-1, Ex. 14) Plaintiffs' Opposition to Reassignment:

Preliminary Statement and Procedural Context: Plaintiffs, William James and Terri V. Tucker, formally objected to the reassignment of their Civil RICO action, contending that defendants' motion to reassign lacks any legal or factual basis and constitutes a recurring defense tactic deployed to gain strategic advantage in related litigation. Plaintiffs emphasized that all prior related cases were fully disclosed through attached exhibits (E and F), and that any omission on the civil cover sheet was due to space limitations, not intent to mislead. Plaintiffs assert that defense counsel failed to review these exhibits, and that the civil cover sheet (Box #7) was properly checked and referenced.

Challenge to Legal Sufficiency of Defense Motion: Plaintiffs noted that defendants failed to cite any statutory, regulatory, or rule-based authority justifying reassignment. The motion does not meet the threshold for relief and is procedurally deficient, lacking both a proper notice of motion and a memorandum of law as required by federal practice.

Plaintiffs further argued that the authorities cited by defendants—such as 28 U.S.C. § 455 (recusal/disqualification), 28 U.S.C. § 1406(a) (venue), or Fed. R. Civ. P. 63 (judge's inability to proceed)—do not support reassignment under the facts of this case. Disclosure and Distinction from Prior Cases: Plaintiffs reiterated that all prior cases were disclosed via exhibits and referenced in the complaint (Doc. 1, 85, p. 22, Exs. 10, 26), and that the current RICO action (Nature of Suit 470) is legally and factually distinct from any prior copyright or related actions.

Plaintiffs highlighted that the defense's argument for reassignment, based on supposed relatedness, fails because the present case asserts unique RICO theories and new predicate acts not previously adjudicated. Pattern of Defense Misconduct and RICO Predicate Acts: Plaintiffs alleged a pattern of defense misconduct, including improper case transfers, missed deadlines, and judicial reassignments, as part of a broader racketeering enterprise. Plaintiffs cited specific examples: the transfer of the Pennsylvania case to New York without proper process, and the reassignment of their Georgia case to Judge Thrash, both allegedly designed to avoid default judgments Docs. (41, 47, 57-59, 99, 119, Exs. 81-84, 35, 40) and secure favorable outcomes. Plaintiffs argued that the defendants' own statements and conduct constitute admissions of a pattern of racketeering activity and predicate acts under RICO, and that the current litigation is not a mere duplication of prior actions.

Procedural Irregularities and Prejudice: Plaintiffs documented repeated procedural irregularities, including defense failures to answer, missed deadlines, and the courts' refusal to enforce defaults or proper procedure. Plaintiffs asserted that these irregularities, coupled with the defense's motion for reassignment, are prejudicial and designed to suppress their claims and evade substantive adjudication. Plaintiffs emphasized their right to a jury trial under the Seventh Amendment (citing *Feltner v. Columbia Pictures*), and objected to any reassignment that would undermine this right.

Relief Requested: Plaintiffs respectfully requested that the Court deny the defendants' motion to reassign, move, or transfer this action, and allow the case to proceed before Judge Richard W. Story on its merits. Strategic and Legal Significance; This opposition demonstrates Plaintiffs' procedural diligence, the distinct nature of their RICO claims, and a clear refutation of the defense's arguments regarding disclosure and relatedness. Plaintiffs'

allegations of a coordinated defense strategy and procedural manipulation reinforce their RICO predicate theories and support their position that reassignment would be unwarranted and prejudicial.

**4. Summary of Defendants' Motion to Quash Service and Set Aside Default (Doc. 52, Ex. 15): Mischaracterization of Civil RICO Claims as Copyright Infringement**

**Procedural Posture and Defendants' Motion**

On May 24, 2017, Defendants Lionsgate Entertainment, Oprah Winfrey Network, Oprah Winfrey, and Harpo, Inc. (collectively, "Defendants") moved to quash service of process and to set aside any entry of default. (See Ex. 15).

Defendants argue that Plaintiffs' attempts at service were procedurally defective, citing multiple summonses, alleged improper service methods (including use of regular and certified mail without statutory notice), and confusion regarding the proper parties and addresses for service.

**Defendants' Characterization of Plaintiffs' Claims**

Defendants assert that Plaintiffs' civil RICO claims are "improperly repackaged" copyright infringement claims previously dismissed with prejudice.

They repeatedly describe the RICO allegations as "implausible," "frivolous," and "largely incomprehensible," attempting to persuade the Court that the present action is not distinct from prior copyright litigation.

Defendants' filings omit the legal distinction between a standalone copyright claim and a civil RICO action, which requires proof of a pattern of racketeering activity and enterprise involvement under 18 U.S.C. §§ 1961–1968.

### Arguments Regarding Service of Process

Defendants detail Plaintiffs' various attempts at service, including service by mail and attempts on individuals not authorized to accept service, and claim these methods do not comply with Federal Rule of Civil Procedure 4 or Georgia law.

They argue that none of the Defendants were properly served, and thus the Court lacks personal jurisdiction over them.

### Request to Set Aside Default (Rule 55(c) "Good Cause" Standard)

In the alternative, Defendants seek to set aside any entry of default (Doc. 52, Ex. 15), arguing that any default was not willful or culpable but resulted from confusion caused by Plaintiffs' service efforts and the volume of summonses and returns.

Defendants emphasize that they acted promptly in filing responsive pleadings and that Plaintiffs suffered no prejudice from any alleged delay.

They cite Eleventh Circuit precedent expressing a strong preference for resolving cases on the merits rather than on procedural defaults.

### Strategic Use of Prior Litigation and Preclusion Doctrines

Defendants cite prior copyright litigation and dismissals as grounds for preclusion, asserting that Plaintiffs are attempting to relitigate claims already decided against them.

This argument is used both to support their motion to set aside default and to frame the RICO action as barred by res judicata and collateral estoppel, despite the distinct statutory elements of a RICO claim.

**Material Misrepresentation and Impact on Plaintiffs**

By conflating RICO and copyright claims, Defendants attempt to manipulate the procedural

and substantive posture of the case, potentially depriving Plaintiffs of a fair adjudication on

the merits of their RICO claims.

This mischaracterization is material for purposes of any Rule 60(b) motion and supports

Plaintiffs' arguments regarding judicial bias, procedural irregularities, and due process

violations.

**Supporting Record:**

Defendants' Motion to Quash and Set Aside Default, (Doc. 52, Ex. 15)

Related pleadings and prior Orders referenced therein

**Supplement to Statement of Facts: Defendants' Conduct and Service of Process**

On May 24, 2017, Defendants Lionsgate Entertainment, Oprah Winfrey Network, Oprah

Winfrey, and Harpo, Inc. (collectively, "Defendants") moved to quash service of process and

to set aside any entry of default. (See Doc. 52, Ex. 15.) Defendants alleged procedural defects

in Plaintiffs' service, citing the issuance of multiple summonses, use of regular and certified

mail without statutory notice, and purported confusion regarding proper parties and service

addresses.

However, the record demonstrates that Defendants' counsel appeared for one of his eight

clients (Tyler Perry and related entities) 11 days prior to any default, filing an Answer (Doc.

33) with 11 exhibits referencing prior copyright litigation, a Corporate Disclosure Statement,

Certificate of Interested Persons, three Notices of Appearance for all privities, a Motion to

Transfer the case to a judge by name, and an Application for Admission of Tom J. Ferber.

Despite this extensive engagement, counsel failed to timely answer for Lionsgate, Barbara

Hunt, Oprah Winfrey, and Harpo, whose answers were due by May 5, 2017 (Lionsgate's answer due by May 19, 2017), and offered no evidence of excusable neglect for these failures.

Notably, Defendants' Omnibus Motion (Doc. 67, Affidavit, Ex. 20) included a sworn declaration from B. James Gladstone, Executive Vice President of Business & Legal Affairs at Lionsgate Entertainment, in which Gladstone claimed uncertainty regarding whether or when he had been personally served, and stated that Lionsgate believed its answer was due on May 30, 2017, based on an internal misunderstanding. (Doc. 67-1, Ex. 20) This statement is contradicted by Plaintiffs' process server's sworn affidavit (Doc. 73, Ex. 79), which affirms that Jim Gladstone personally accepted service on behalf of Lionsgate at its business address on April 28, 2017. The affidavit details the date, time, and circumstances of service, and is executed under penalty of perjury.

This evidentiary conflict directly undermines Defendants' arguments regarding improper service and lack of notice. The record establishes that service was effected in compliance with applicable rules, and Defendants' assertions to the contrary are unsupported and, in the case of the Gladstone declaration, demonstrably false.

Defendants' filings further mischaracterize Plaintiffs' civil RICO claims as "improperly repackaged" copyright infringement, omitting the legal distinction between RICO claims— which require proof of a pattern of racketeering activity under 18 U.S.C. §§ 1961–1968—and standalone copyright claims. Defendants' strategic invocation of preclusion doctrines (res judicata and collateral estoppel) is unsupported, as Plaintiffs' RICO claims assert different legal theories, facts, and injuries not previously adjudicated.

By conflating these issues and submitting false or misleading declarations, Defendants have

sought to manipulate the procedural posture and deprive Plaintiffs of a fair adjudication on

the merits, supporting Plaintiffs' arguments regarding judicial bias, procedural irregularities,

and due process violations. (See also Doc. 101, 102, and related Rule 60(b) filings.)

Supporting Record:

Defendants' Motion to Quash and Set Aside Default, (Doc. 52, Ex. 15)

Answer and Exhibits, (Doc. 33, 43, 44, Ex. 80, 87)

Declaration of B. James Gladstone, Doc. (67-1, Ex. 20)

Affidavit of Service by Bradford B. Weekes, (Doc. 73, Ex. 79)

Plaintiffs' Joint Application of Appeal, (Doc. 101, Ex. 85)

Plaintiffs' Joint Notice of Appeal, (Doc. 102, Ex. 86)

## 5. Grounds for Relief: Defendant Hunt's Failure to Answer and the Court's Procedural Error

Defendant Barbara Hunt filed a motion to dismiss for lack of jurisdiction (Doc. 45, Ex.

88) instead of answering the complaint. Plaintiffs promptly responded with a motion to strike

(Doc. 53) and moved for default (Docs. 57 & 59, Ex. 83-84) when Hunt failed to answer all

claims. Under Fed. R. Civ. P. 12(a) and controlling case law, a defendant must answer any

unaddressed claims or promptly respond after a Rule 12 motion is denied. The Court failed to

address Plaintiffs' motions for default and granted Hunt's motion to dismiss without

requiring a full answer, resulting in procedural irregularity and manifest injustice.

See *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981); *F.T.C. v. Compagnie de Saint-*

*Gobain-Pont-a-Mousson*, 636 F.2d 1300, 1311 (D.C. Cir. 1980); Fed. R. Civ. P. 55(a).

This error denied Plaintiffs the opportunity for default judgment or a fair decision on the merits, supporting relief under Rule 60(b).

6. **Grounds for Relief: Ignored Filings, Defaults, and Due Process Violations (Docs. 53, 57, 58, 59, 61, 72, Ex. 16, 82-83, 17, 22)**

Throughout these proceedings, Plaintiffs properly filed multiple motions—including to strike, for entry of default, and for judgment on the pleadings (Docs. 53, 57, 58, 59, 61, 72 Ex. 16, 82-83, 17, 22)—based on Defendants' failure to timely answer, lack of excusable neglect, and procedural violations under the Federal Rules of Civil Procedure and the Civil RICO Act. Despite proof of proper service and compliance with all rules, defaults were not entered against Defendants.

After Judge Thrash was reassigned at Defendants' request, the Court systematically ignored Plaintiffs' key filings and defaults, adopted defense arguments, and allowed Defendants to continue litigating while in default Amended Complaint (Doc. 85, Ex. 26). The Court also made personal and dismissive remarks about Plaintiffs in its orders and ruled on its own recusal motion, raising serious concerns about impartiality and due process.

These actions constitute procedural irregularity, prejudice against pro se litigants, and denial of due process, undermining the integrity of the proceedings. Plaintiffs respectfully submit that these facts warrant relief from judgment under Rule 60(b), reassignment to a different judge, and a fair opportunity to have all pending motions and defaults adjudicated on their merits. (See Docs. 95, 124–139, 154, 168-69, 95, Exs. 32, 43-57-58, 62-63, 77).

7. **Systematic Discovery Violations, Collusive Conduct, and Fraud on the Court:**

In the instant case, the record demonstrates a sustained pattern of discovery violations and collusive conduct between Defendants and the presiding judge, culminating in the

CORRECTED COPY

deprivation of Plaintiffs' due process rights and undermining the integrity of these

proceedings. Plaintiffs respectfully direct the Chief Judge to the following specific docket

entries and factual events:

## Unified Defense and Early Mischaracterization

Defendants filed substantively identical answers (Docs. 33, 43, 44; Amended Answers Docs.

57, 58) and, in their initial pleadings and Doc. 52 (Motion to Quash), mischaracterized

Plaintiffs' operative RICO and antitrust claims as mere copyright infringement. Defendants

requested Judge Thrash by name (Doc. 31), resulting in transfer to a judge who was later

named as a defendant and refused to recuse (see Doc. 81).

## Coordinated Motions to Stay and Deny Discovery

Defendants moved to stay discovery and for injunctive relief at multiple points, including

Docs. 74, 87, and 89, explicitly arguing Plaintiffs "had no need for discovery," a position

adopted by the Court. The Court granted Defendants' motions to stay discovery (Orders 95,

96), denied Plaintiffs' motion to compel discovery (Doc. 97), and refused a hearing (Doc.

64), effectively foreclosing any opportunity for Plaintiffs to obtain evidence, present facts, or

rebut Defendants' misrepresentations. Most critically, the Court subsequently denied

Plaintiffs' renewed Motion to Compel Discovery in Order Doc. 124 (entered October 18,

2017), further enforcing the discovery stay and preventing Plaintiffs from obtaining material

evidence essential to their RICO claims.

## Judicial Adoption of Defendants' Arguments and Denial of Access

Defendants' request for clarification (Doc. 111) and the Court's response further entrenched

the discovery stay, while Plaintiffs' objections (Doc. 124) were overruled. The Court delayed

all discovery until after Defendants' dispositive Rule 12(c) motion (treated as Rule 12(b)(6)), ensuring Plaintiffs could not substantiate their claims before dismissal.

### Entry of Filing Injunction and Use of Pejorative Language

While appeals were pending and Judge Thrash remained a named defendant, the Court entered Order 168, granting summary judgment to Defendants (Doc. 157), denying Plaintiffs' motion (Doc. 162), and imposing a filing injunction under the All Writs Act, 28 U.S.C. § 1651(a), without notice or hearing. The Court's order characterized Plaintiffs as *"frivolous," "ludicrous," and "abusive litigants,"* further evidencing bias and lack of neutrality. These actions, as documented in the above-referenced docket entries, collectively deprived Plaintiffs of their rights to due process, access to the courts, and fair adjudication. The collusive denial of discovery—including the express denial of Plaintiffs' Motion to Compel on Order Doc. 124—judicial adoption of Defendants' mischaracterizations, and imposition of sweeping filing restrictions constitute "extraordinary circumstances" and "fraud on the court" as defined by United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) and Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978), warranting vacatur and recusal under Fed. R. Civ. P. 60(b)(3), (d)(3), and 28 U.S.C. § 455.

**8. Grounds for Relief Procedural Irregularities in Motions Practice and Amended Complaint:**

Significant procedural irregularities occurred after Defendants filed dispositive motions and Plaintiffs amended the complaint to add Judge Thrash as a defendant. Defendants styled their dispositive motion (Doc. 74, Ex. 23) as one for judgment on the pleadings under Rule 12(c) but argued for dismissal under Rule 12(b)(6). Under the Federal Rules, a Rule 12(b)(6) motion must be filed before answering the complaint, while a Rule 12(c) motion is only

proper after the pleadings are closed. The Court's acceptance of Defendants' mislabeled and untimely motion, after an answer had been filed, constitutes procedural error and prejudiced Plaintiffs' rights.

After Plaintiffs amended the complaint, all defendants were required under Fed. R. Civ. P. 15(a)(3) to answer or respond within 14 days. The record shows not all defendants filed timely responses, yet the Court failed to address Plaintiffs' motions for default and judgment (Docs. 85, 99, 119, 162, 195 Exs. 26, 35, 40, 61, 77), instead relying on pleadings and motions directed at the original complaint (Doc. 1, Ex. 10). Judge Thrash also ruled on his own dismissal (Doc. 116, Ex. 38) and recusal (81, 120, Exs. 25, 41), violating due process and supporting extraordinary circumstances under Rule 60(b).

Additionally, Judge Story previously found that Plaintiffs had properly pleaded copyright infringement as a predicate act for RICO (Doc. 15, Ex. 12), while Judge Thrash later issued a contrary order (Doc. 138, Ex. 57), in violation of the law of the case doctrine. See Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988).

These cumulative procedural errors—including the Court's disregard for required answers to the amended complaint, reliance on outdated pleadings, and inconsistent rulings—have resulted in manifest injustice and denial of due process. Plaintiffs respectfully request relief under Rule 60(b), including vacatur of the judgment and reassignment for impartial adjudication.

**9. Grounds for Relief: Amended Complaint (Doc. 85) and Judicial Misconduct Allegations**

On July 5, 2017, Plaintiffs filed an amended complaint (Doc. 85, Ex. 26), naming Chief Judge Thomas W. Thrash, Jr. as a defendant and alleging his participation as a co-conspirator in the RICO and related claims, based on Plaintiffs' personal knowledge of procedural

history and perceived judicial misconduct. Although the court later removed the "co-conspirator" label, Judge Thrash remained a named defendant (Doc. 85, letter "r."), and a summons was issued (Doc. 94). Service was completed on July 14, 2017 (Doc. 100), and Judge Thrash's answer was due August 4, 2017.

No orders were entered striking or denying the amended complaint, nor relieving any defendant—including Judge Thrash—of the obligation to answer. Defendants did not file timely answers, nor did they seek or obtain any order excusing their default or opposing the amended complaint. Plaintiffs maintain this failure was willful and inexcusable, waiving any right to contest default or challenge the amended complaint's sufficiency.

Plaintiffs moved for default judgment (Doc. 119, Ex. 40), which was well-founded under the Federal Rules. Judge Thrash was thus properly added as a defendant and served. On August 31, 2017, a motion to dismiss was filed on his behalf (Doc. 116, Ex. 38) by the United States Attorney, arguing lack of proper service, judicial and sovereign immunity, failure to state a RICO claim, and improper joinder. Plaintiffs responded (Doc. 117, Ex. 39), objecting that Judge Thrash's actions constituted judicial misconduct and violated due process, and that judicial immunity does not protect acts outside the law or without jurisdiction. Plaintiffs cited authority that orders by a "trespasser of the law" are void, and referenced prior cases (e.g., Windsor v. Duffey) evidencing a pattern of prejudice against pro se litigants. (See Doc. 85, Ex. 26, p. 16)

The court ruled on defense motions before Plaintiffs' reply period expired and disregarded evidence of proper service, demonstrating procedural irregularity, bias, and denial of due process. Judge Thrash, represented by the State Department, remained a named

defendant throughout appellate proceedings and had actual notice and opportunity to respond, satisfying due process.

While Plaintiffs acknowledge judicial immunity generally protects federal judges for official acts, the court's handling of the amended complaint—including striking allegations and ignoring procedural requirements—demonstrates irregularity, bias, and procedural unfairness, supporting relief under Rule 60(b). Plaintiffs timely and diligently raised these concerns and preserved them for the record and appellate review.

## 10. Grounds for Relief: Plaintiffs' Motion(s) for Judgment of Default and Judgment as a Matter of Law (Doc 99, 119, 162 )

Plaintiffs moved for judgment as a matter of law pursuant to Rule 50(a)(2) and (b) (Docs. 99, 119, 162; Exs. 35, 40, 61), asserting that Defendants failed to present any admissible evidence to rebut Plaintiffs' proof of RICO predicate acts, antitrust violations, criminal copyright infringement (as both a pattern and predicate act), copyright plagiarism, intentional procedural violations, threats to attorneys, and civil conspiracy. Plaintiffs further contend that Defendants' strategy of repeatedly referencing prior actions and obtaining judgment in their favor mirrors the erroneous manner in which judgment was entered in the instant Civil RICO case.

Despite proper service and repeated procedural defaults by Defendants—including failure to timely answer, late and improper filings, and other violations (Docs. 41, 47, 57, 58, 59)—the Court declined to address Plaintiffs' substantive filings or to enter default or sanctions against Defendants. Instead, the Court permitted Defendants to proceed without consequence, disregarding the clear requirements of the Federal Rules.

Plaintiffs objected to the Court's personal and dismissive remarks and have documented a pattern of judicial favoritism and prejudgment, resulting in the denial of due process and a fair

Corrected Ex. 2 Pls.' Joint Decl'r – Statement of the
facts for Plaintiffs' Rule 60(b) Motion and memorandum

16

hearing (see Docs. 76, 95, 96, 124–138, 154, 168–169, 180, 195; Exs. 24, 32–33, 43–58, 62–63, 71–77). Plaintiffs incorporate all prior evidence and authorities by reference, and submit that these cumulative procedural irregularities and judicial bias constitute grounds for relief under Rule 60(b), including vacatur of judgment and reassignment.

Defendants repeatedly failed to timely answer or defend against Plaintiffs' RICO, antitrust, and related statutory claims. Despite proper service and documented defaults, Defendants' late and procedurally defective filings—including answers that addressed only copyright issues (Docs. 33, 43–44, Exs. 80, 87)—should have been stricken, and all defaults recognized under the Federal Rules. Defendants' Motion to Quash (Doc. 52, 15) and Omnibus Motion (Doc. 67; Ex. 20) were both untimely and offered no excusable neglect, while their responses to Plaintiffs' Motion to Strike (Doc. 53; Ex. 16) and Motion for Summary Judgment (Doc. 61; Ex. 17) failed to comply with both the Court's local rules and Fed. R. Civ. P. 56.

Plaintiffs further object to the Court's consistent approval of untimely filings and note that, to date, no Defendant has filed an answer to the Amended Complaint (Doc. 85, Ex. 26). Defendants' Rule 12(b)(6) motion (Doc. 74, Ex. 23) triggered Plaintiffs' automatic right to amend under Rule 15(a)(3), yet Judge Thrash—added as a Defendant in Doc. 116—ruled on his own recusal and instituted reassignment without consent of all parties. The pattern of orders reflects judicial bias and prejudgment, including dismissing substantive objections and failing to properly apply jurisdictional and contract law.

These cumulative procedural irregularities, denials of due process, and failures to follow established legal standards support Plaintiffs' entitlement to judgment as a matter of law, reversal of all adverse orders, and reassignment to a different judge pursuant to Rule 60(b).

## 11. Pattern of Summary Denial: Doc. 101/103 Orders – Denial of Plaintiffs' Motion for Appeal and Motion to Transfer Docket

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued an order denying Plaintiffs' Motion for Appeal under 28 U.S.C. § 1292(b) (Doc. 101, Ex. 85) and Motion to Transfer the Docket [Doc. 103]. The Court summarily denied both motions, stating that an interlocutory appeal would not present a controlling question of law with substantial grounds for difference of opinion, and declined to address Plaintiffs' substantive or procedural arguments.

The order also referenced the dismissal of Plaintiffs' appeals, which may have been inaccurate or premature given pending notices of appeal. This order is part of a broader pattern of same-day summary denials, reinforcing the lack of individualized review and procedural fairness. Plaintiffs respectfully submit that these cumulative procedural barriers and the Court's failure to engage with controlling legal questions support extraordinary relief under Rule 60(b).

## 12. Document 119 – Plaintiffs' Motion for Judgment of Default: Chronology, Defaults, and Due Process Violations

On September 28, 2017, Plaintiffs, proceeding pro se, filed a Motion for Judgment of Default (Doc. 119, Ex. 40) against all named defendants—including Oprah Winfrey, OWN, HARPO, Lionsgate, Barbara Hunt, and Tyler Perry—based on their repeated failure to timely answer or respond to the operative Amended Complaint (Doc. 85, Ex. 26), following multiple prior motions for default (Docs. 41, 47, 57, 58, 59, Exs. 81, 82-84).

At the time, the Amended Complaint remained operative and unstricken, obligating all defendants to answer or otherwise respond. No order relieved them of this duty, and no excusable neglect was shown as required by Fed. R. Civ. P. 55(c)–(d). Despite Plaintiffs'

compliance with all procedural requirements—including proper service and timely motions—neither the clerk nor the court entered default as mandated by Rule 55(a). Instead, defendants were allowed to file untimely answers and counterclaims after their deadlines, in direct violation of Rule 55(a)–(b). Plaintiffs' related motions to strike and to quash service (Docs. 52, 53, Exs. 15-16) were mishandled, and defendants' filings were not properly served on Plaintiffs.

The failure to enter default deprived Plaintiffs of procedural protections and remedies under the Federal Rules. Despite the clear record of default, the Court denied Plaintiffs' motions for default judgment (Docs. 76, 95, Exs. 24, 32) and reconsideration (Doc. 81) (Ex. 25). Orders denying default and reassigning the case (Docs. 71, 76, 95, 96, Exs. 21, 24, 32, 33) were not certified, signed, or properly filed with the clerk, rendering them unenforceable under 28 U.S.C. § 1292(b) and Eleventh Circuit precedent (see, e.g., *Bowman v. Richland Mem'l Hosp.; Gen. Television Arts, Inc. v. S. Ry. Co*). The Eleventh Circuit denied Plaintiffs' interlocutory appeal for lack of jurisdiction, not on the merits, because the orders were not certified.

Plaintiffs maintained that personal jurisdiction was proper under 18 U.S.C. § 1965(b), and that denial of default and related irregularities violated their Fifth, Seventh, and Fourteenth Amendment rights. The court's actions denied Plaintiffs a fair opportunity to prosecute their claims, due process, and equal protection. Plaintiffs further alleged fraud on the court, perjury, and sanctionable conduct by defense counsel under Rules 11 and 37, citing supporting case law (e.g., *Mac Sales Inc. v. E.I. duPont; Chavez v. City of Albuquerque*).

Plaintiffs requested judgment as a matter of law under Rules 8, 11, 37, 50, 55, 58, and 28 U.S.C. §§ 764, 845, including default judgment, treble and punitive damages, constructive

wages, and all other just relief under Civil RICO, as well as sanctions for fraud and perjury. The denial of default judgment, despite procedural entitlement, constitutes extraordinary circumstances under Rule 60(b) and supports vacatur and renewed adjudication on the merits.

Throughout the litigation, Plaintiffs did not receive notice of certain critical filings or orders, including reassignment, and were not given an opportunity to respond or object. As pro se litigants, this lack of notice and transparency prejudiced Plaintiffs' ability to participate meaningfully in the proceedings.

## 13. Procedural Barriers, Improper Preclusion and Denial of Access, and Constitutional Violations Warranting Relief Under Rule 60(b)

Plaintiffs, appearing pro se, timely filed and served both original and amended complaints pursuant to Fed. R. Civ. P. 4. Defendants, represented by coordinated counsel, repeatedly mischaracterized Plaintiffs' RICO claims as duplicative copyright litigation to evade substantive review, disregarding the central allegation of criminal copyright infringement as a RICO predicate act and the assertion of new legal theories, predicate acts, and injuries not previously litigated. Judge Story granted Defendants' transfer motion (Doc. 31, Ex. 13) over Plaintiffs' opposition, relying on this mischaracterization rather than the substance of Plaintiffs' claims (Order 71, Ex. 21). Throughout these proceedings, Defendants systematically sought to avoid addressing Plaintiffs' operative RICO allegations by filing a series of procedural motions designed to restrict Plaintiffs' participation and delay substantive adjudication. For example, after the Court granted a stay of proceedings and discovery (Doc. 95, Ex. 32), Defendants filed a Motion for Clarification (Doc. 111, Ex. 37) and a Motion for Immediate Hearing (Doc. 121), both aimed at preventing Plaintiffs from

filing further motions and relieving Defendants of their obligation to respond. Plaintiffs promptly opposed these efforts (Docs. 114, 123, Ex. 42), highlighting Defendants' ongoing failure to answer the Amended Complaint, their repeated failures to file timely or proper pleadings, and their pattern of procedural distractions intended to evade the RICO claims. Plaintiffs further objected that Defendants' motions were part of a strategy to confuse the record, avoid their obligations under the Federal Rules, and impede fair adjudication, and requested judgment as a matter of law due to Defendants' defaults. The Court ultimately denied the Motion for Immediate Hearing (Doc. 121) as moot by docket entry, but on October 18, 2017, granted Defendants' Motion for Clarification (Order Doc. 132, Ex. 51), ruling that "Defendants are not required to respond to the Plaintiffs' motions until after the Court rules on the pending Motion for Judgment on the Pleadings." This order further restricted Plaintiffs' ability to participate and enabled Defendants to continue avoiding a substantive response to the RICO allegations. This sequence of filings, oppositions, and resulting orders demonstrates a clear pattern of procedural barriers and judicial irregularities that repeatedly denied Plaintiffs due process and meaningful access to the courts, and is directly relevant to the extraordinary circumstances justifying relief under Rule 60(b).

Defaults were entered against several defendants (Docs. 41, 47, Exs. 81-82), and Plaintiffs timely moved for default judgment (Docs. 57–59, Ex. 83-84), but the Court failed to adjudicate those motions. After Judge Thrash was named as a defendant in the Amended Complaint (Doc. 85, Ex. 26), he refused to recuse (Docs. 81, 120, Exs. 25, 41), answered the complaint, and triggered Defendants' obligation to respond under Rule 15(a)(3); Defendants, however, failed to answer, constituting default under Rule 55(a). The Court granted Defendants' motions to quash, denied Plaintiffs' motions for default, discovery, and a

hearing, and reassigned the case without proper notice, further denying Plaintiffs ECF access and meaningful participation. Although Defendants' motion at (Doc. 74, Ex. 23) was styled as a Rule 12(c) motion, it functioned as a Rule 12(b)(6) motion, thereby triggering Plaintiffs' right to amend as of course, which Plaintiffs timely exercised within six days—well within the 21-day period provided by Rule 15(a)(1)(B).

Judge Thrash subsequently issued batch rulings terminating all parties (Docs. 124–139, Exs. 43–57), closed and reopened the case without explanation, and adjudicated counterclaims before resolving Plaintiffs' main claims. Plaintiffs' rights to due process, access to the courts, and a jury trial were further denied when Defendants, while in default, were permitted to pursue summary judgment and injunctive relief (Doc. 157, Ex. 154), the Court imposed a filing injunction (Doc. 168, Ex. 62), Plaintiffs' motion to reopen discovery and set the case for trial (Doc. 191, Ex. 74) was met with administrative objections (Doc. 192, Ex. 75), and all pending motions, including (Doc. 191, Ex. 74), were summarily denied without adjudication on the merits (Doc. 195, Ex. 77). On appeal, the Court invoked Rule 9(b) without identifying any deficiency or permitting amendment, and ultimately dismissed Plaintiffs' RICO claims on erroneous preclusion grounds, despite new predicate acts and ongoing racketeering activity. Throughout, Plaintiffs' constitutional rights—including due process (U.S. Const. amend. V), notice, hearing, meaningful access to courts, and the right to a jury trial (U.S. Const. amend. VII)—were repeatedly violated, and the extraordinary circumstances of the COVID-19 pandemic further impeded Plaintiffs' ability to prosecute their claims.

Application of preclusion doctrines at the initial pleading stage—without affording Plaintiffs notice, a meaningful opportunity to be heard, or leave to amend—constitutes both a

mistake of law and a violation of due process, warranting relief under Fed. R. Civ. P. 60(b)(1) and 60(b)(6). See *Brown v. Felsen*, 442 U.S. 127, 132 (1979); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.7 (1979); *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955); *Living Designs, Inc. v. DuPont*, 431 F.3d 353, 362 (9th Cir. 2005). The Court's preclusion of Plaintiffs' RICO claims at the pleading stage—without proper notice, hearing, or leave to amend—not only constitutes legal error under Rule 60(b)(1), but also rises to the level of a constitutional violation and extraordinary circumstance justifying relief under Rule 60(b)(6). This manifest injustice warrants vacatur of the judgment and restoration of Plaintiffs' rights to due process, meaningful participation, and adjudication on the merits.

## 14. Doc. 120 – Plaintiffs' Motion for Recusal of Chief Judge Thomas W. Thrash, Jr.

On October 6, 2017, Plaintiffs William James and Terri V. Tucker, proceeding pro se, filed (Doc 120, Ex. 41)—Plaintiffs' Motion for Recusal of Chief Judge Thomas W. Thrash, Jr.—in Case No. 1:17-cv-1181-TWT. In this motion and the accompanying memorandum of law, Plaintiffs formally moved for recusal and disqualification of Judge Thrash pursuant to Federal Rule of Civil Procedure 63 and 28 U.S.C. § 455, citing both actual and apparent bias, denial of due process, and multiple procedural and constitutional violations.

Plaintiffs detailed the following grounds for recusal: Judge Thrash's continued participation after being named as a defendant in the amended complaint, in direct violation of 28 U.S.C. § 455(a); Denial of procedural due process, including ignoring Plaintiffs' motions and evidence, and failing to permit responses to certain motions; Improper service findings and reliance on uncertified orders, which the Eleventh Circuit later deemed "moot" due to lack of certification; Repeated use of dismissive language and adoption of defendants' verbiage in

court orders, indicating bias and partiality; Allegations of procedural manipulation, including allowing defendants to select the judge and potential ex parte communications; Violation of Plaintiffs' rights under the 5th, 6th, 7th, and 14th Amendments.

Plaintiffs requested immediate recusal and reassignment to a different district judge to ensure due process, impartiality, and the integrity of the proceedings:

This filing documents Plaintiffs' timely and specific objection to judicial bias and procedural irregularities, preserves the record for appellate review, and provides further support for extraordinary circumstances justifying relief under Rule 60(b). Plaintiffs respectfully incorporate (Doc 120, Ex. 41) and its supporting memorandum as evidence of judicial misconduct, denial of due process, and the need for vacatur of all orders entered by Judge Thrash after he was named as a defendant.

## 15. Defendants' Pattern of Procedural Maneuvering to Avoid Answering Civil RICO Allegations

From the outset, Defendants—including Harpo, Barbara Hunt, Lionsgate Entertainment, Oprah Winfrey Network, Tyler Perry, Tyler Perry Company, Tyler Perry Studios, and Oprah Winfrey—engaged in a coordinated pattern of procedural maneuvering to avoid addressing the merits of Plaintiffs' civil RICO claims. Defendants repeatedly filed motions—such as the Motion to Stay (Doc. 87, Ex. 27), Motion for Protective Order and to Stay Discovery (Doc. 89, Ex. 29), and Motion for Clarification (Doc. 111, Ex. 37)—all aimed at halting discovery, pausing proceedings, and shifting focus away from their obligation to answer the Amended Complaint (Doc. 85, Ex. 26).

Plaintiffs promptly opposed these efforts (Docs. 92, 93, 114, 123, Ex. 31, 42),

highlighting Defendants' pattern of late and improper filings and arguing that these motions

were part of an ongoing effort to evade substantive review of the RICO allegations.

Nonetheless, the Court granted Defendants' requests, staying all discovery and relieving

Defendants of any obligation to respond to Plaintiffs' discovery (Order 95, Ex. 32), and later

explicitly excusing Defendants from responding to Plaintiffs' motions until after the Court

ruled on dispositive motions (Order 132, Ex. 51).

The Court also adopted Defendants' negative characterizations of Plaintiffs' filings,

describing them as voluminous and lacking merit, further prejudicing Plaintiffs' right to be

heard. Defendants continued to seek procedural restrictions through additional motions

(Docs. 111, 121, Ex. 37), and the Court's rulings consistently favored Defendants' efforts to

avoid engagement with the substantive civil RICO allegations, despite Defendants being in

default for failing to answer.

Plaintiffs assert that this sequence of motions and orders reflects a deliberate strategy by

Defendants to dictate the case schedule, focus on procedural technicalities, and avoid

accountability for the RICO claims. The Court's adoption of Defendants' framing and

repeated granting of procedural shields further prejudiced Plaintiffs' right to a fair and

substantive adjudication.

**16. Doc 108 – Plaintiffs' Reply to Defendants' Response to Plaintiffs' Opposition to Judges' Orders 95 & 96 (Filed July 26, 2017):**

On July 26, 2017, Plaintiffs filed a Reply (Doc. 108) rebutting Defendants' assertions that

Plaintiffs' filings were frivolous or lacked legal basis. Plaintiffs contested these

characterizations and highlighted a pattern of disregard for federal law and procedure by both

Defendants and the Court. As pro se litigants in the Northern District of Georgia, Plaintiffs were denied access to CM/ECF electronic filing, placing them at a significant disadvantage and forcing reliance on postal delivery for notice of filings. Plaintiffs asserted that they did not timely receive key documents, including Defendants' Motion to Stay (Doc. 87, Ex. 27), and were denied the response period guaranteed by the Federal Rules due to improper service and mailing delays. This prejudiced their ability to participate fully, as Defendants' delayed mailings reduced the time available to prepare responses, and resulted in substantial out-of-pocket expenses, including thousands of dollars in mailing and travel costs to deliver documents to the Court.

Plaintiffs further detailed ongoing misconduct, including Defendants' continued motion practice despite being in default, persistent failure to explain late filings or properly serve Plaintiffs, and the Court's failure to enforce procedural rules. They noted that Judge Thrash, named as a Defendant, ruled in favor of Defendants after being selected by name in (Doc. 31, Ex. 13) and failed to recuse, raising concerns of bias, ex parte communications, and favoritism. Plaintiffs argued that the record demonstrates a pattern of more than 100 predicate acts by Defendants—including illicit fund use, improper filings, and manipulation of proceedings—to avoid substantive review of the RICO claims, all directly relevant to the ongoing enterprise and the RICO allegations.

Plaintiffs asserted their right to respond to all motions and emphasized that their RICO claims were properly pled. They argued that Defendants should be returned to default status due to perfected service and lack of proper legal remedy, and that motions for reconsideration were justified given ignored service and court oversight. Plaintiffs also highlighted the Court's adoption of Defendants' language in its orders as further evidence of prejudice.

Plaintiffs maintained compliance with all procedural rules, while Defendants and the Judge

failed to meet ethical and legal standards. Accordingly, Plaintiffs requested that the Court

grant their Motion for Judgment as a Matter of Law (Doc. 99, Ex. 35) under Rule 50(a)(2)(b),

correct the record to reflect procedural and substantive violations, deny all Defendants'

motions, and refrain from implementing any motions other than Default Rule 55 at this time.

## 17. Judge's Late Filing, Obligation to Answer, and Recusal Requirements

Plaintiffs respectfully state that, as of July 26, 2017, Judge Thomas W. Thrash, Jr.—

having been named as a defendant in the Amended Complaint (Doc. 85, Ex. 26)—failed to

timely file an answer or responsive pleading as required by Federal Rule of Civil Procedure

12(a). As a named defendant, Judge Thrash was subject to the same procedural obligations as

all other defendants, including answering within 21 days of service. His failure to do so

constituted a clear procedural default.

Additionally, under 28 U.S.C. § 455, Judge Thrash was required to recuse himself

immediately upon being named as a defendant. The statute mandates recusal in any

proceeding where a judge's impartiality might reasonably be questioned or where the judge is

a party. Judge Thrash's continued involvement—including issuing rulings and orders after

being served as a defendant and after failing to timely answer—was improper and in direct

violation of federal law.

Plaintiffs assert that Judge Thrash's procedural default, combined with his failure to

recuse, resulted in a fundamental denial of due process and deprived Plaintiffs of a fair and

impartial tribunal. Under well-established law, any orders, rulings, or judgments issued by a

judge acting in violation of 28 U.S.C. § 455 are voidable and subject to vacatur. See *Liljeberg*

*v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). The judge's default as a defendant

further compounded the prejudice to Plaintiffs by depriving them of the opportunity to seek default judgment and meaningful adjudication of their claims.

Accordingly, Plaintiffs respectfully request that the Court recognize the invalidity of all orders and proceedings conducted by Judge Thrash after he was named as a defendant and failed to timely answer or recuse. Plaintiffs submit that these violations warrant vacatur of all such orders and request that the case be reopened and reassigned to a neutral and impartial judge, with all defendants required to answer or otherwise respond to the complaint in accordance with the Federal Rules.

## 18. Opposition to Reassignment and Defense Pattern

Plaintiffs William James and Terri V. Tucker expressly objected to the reassignment of their civil RICO action, as detailed in their opposition memorandum (Doc. 42-1, Ex. 14). Plaintiffs demonstrated that all prior related cases were fully disclosed through attached exhibits and referenced in their filings, and any omission on the civil cover sheet was inadvertent and cured by these disclosures. Plaintiffs further established that Defendants failed to cite any law or rule justifying reassignment (Doc. 31, Ex. 13) and instead have engaged in a pattern of procedural tactics—including improper transfers, missed deadlines, and judicial reassignments—intended to suppress Plaintiffs' claims and evade substantive adjudication, consistent with the alleged RICO enterprise.

Plaintiffs maintain that the current RICO case involves distinct legal theories and facts, and that reassignment is unwarranted and prejudicial. The defense's repeated efforts to manipulate judicial assignment and evade defaults reinforce Plaintiffs' claims of racketeering activity and due process violations. Plaintiffs respectfully request that the Court recognize their procedural diligence, deny any relief based on alleged nondisclosure or supposed

similarity to prior actions, and ensure the case proceeds on its merits before a neutral and

impartial judge, with Plaintiffs' Seventh Amendment right to a jury trial preserved.

This pattern of conduct is highly relevant to Plaintiffs' Rule 60(b) motion, as it demonstrates

both Defendants' intent to avoid substantive adjudication of the RICO claims and the Court's

repeated willingness to entertain and grant Defendants' procedural requests at the expense of

Plaintiffs' due process rights and access to justice.

**19. Judicial Bias and Extraordinary Circumstances**

On July 14, 2017, Plaintiffs filed (Doc. 97, Ex. 34)—Plaintiffs' Opposition to Judge

Thrash's Orders (Docs. 95 & 96, Exs.32-33)—objecting to judicial bias, procedural

irregularities, and personal attacks from the bench. Plaintiffs documented that Defendants,

despite being in default, were not held to the same procedural standards as Plaintiffs, and that

evidence of proper service was ignored. The Court ruled prematurely on service issues before

the expiration of the 90-day period, permitted Defendants to file motions while in default and

without legal basis, and held Plaintiffs to heightened attorney standards.

Plaintiffs raised the issue of recusal, arguing that Judge Thrash's continued participation

after being named as a Defendant violated 28 U.S.C. § 455 and that he should not have

participated in any appellate review of his own recusal. Plaintiffs also moved to disqualify

defense counsel due to conflicts and prior threats, but this motion was ignored.

The filing further documents personal and prejudicial comments made by Judge Thrash,

including unfounded characterizations of Plaintiff Tucker, which Plaintiffs argue

demonstrated discrimination and an inability to receive a fair hearing. Plaintiffs requested

reassignment to a different judge under 28 U.S.C. § 455.

This filing, citing numerous federal rules and legal authorities, preserves Plaintiffs' objections to judicial bias, due process violations, and procedural irregularities, and supports the existence of extraordinary circumstances warranting relief under Rule 60(b).

## 20. Judicial Bias and Extraordinary Circumstances – October 19, 2017 Orders

On October 19, 2017, Judge Thomas W. Thrash, Jr. issued (Doc. 134, Ex. 53), denying all of Plaintiffs' Motions to Strike (Docs. 50, 51, 62, 72, Ex. 22) on the basis that Defendants were not in default due to purported improper service and timely answers, and characterizing Plaintiffs' motions as "entirely frivolous." That same day, the Court terminated all defendants—including Judge Thrash himself as a named defendant—through a series of batch orders.

Plaintiffs respectfully submit that Judge Thrash's continued rulings on his own status, without recusal or referral to a neutral judge as required by 28 U.S.C. § 455(a), and the summary disposition of all pending motions without individualized review, constitute procedural irregularity, conflict of interest, and denial of due process. See *Caperton v. Massey*, 556 U.S. 868, 876 (2009) ("objective probability of actual bias" requires recusal); *United States v. Balistrieri*, 779 F.2d 1191, 1202 (7th Cir. 1985) (recusal required where impartiality might reasonably be questioned).

These actions support the existence of extraordinary circumstances warranting relief under Rule 60(b).

## 21. Service of Process:

Plaintiffs William James and Terri V. Tucker affirm that they undertook exhaustive and diligent efforts to effect proper service of process on all defendants, including high-profile individuals and corporations with significant resources and a demonstrated pattern of

evasion. Plaintiffs utilized every available lawful means—U.S. Marshals, professional

process servers, and USPS certified mail—to ensure compliance with Rule 4, as documented

in the docket: Lionsgate Entertainment: Served on 4/5/2017 (Doc. 8), 4/28/2017 (Doc. 35),

and 7/3/2017 (Doc. 84) Tyler Perry: Initially unexecuted (Doc. 9), but subsequently served

on 4/13/2017 (Doc. 19), 4/21/2017 (Doc. 25), and 6/29/2017 (Doc. 79). Oprah Winfrey

Network: Served on 4/8/2017 (Doc. 13), 4/14/2017 (Doc. 17), 4/26/2017 (Doc. 36), and

6/29/2017 (Doc. 79). Harpo: Served on 4/14/2017 (Doc. 16), 4/26/2017 (Doc. 34), and

6/29/2017 (Doc. 79). Oprah Winfrey: Served on 4/26/2017 (Doc. 37) and 6/29/2017 (Doc.

79). Tyler Perry Company and Studios: Served on 4/12/2017 (Doc. 18), 4/21/2017 (Doc. 25),

and 6/29/2017 (Doc. 79). Barbara Hunt: Served on 4/18/2017 (Doc. 23), 5/5/2017 (Doc. 39),

and 6/29/2017 (Doc. 79). Chief Judge Thomas W. Thrash, Jr.: Initial attempt unexecuted

(Doc. 98), but successfully served on 7/14/2017, with answer due 8/4/2017 (Doc. 100).

At every stage, Plaintiffs continued to serve process not out of neglect, but to ensure

every defendant was properly notified and to exhaust all procedural requirements in the face

of evasion and procedural obstacles. Plaintiffs' repeated service efforts were made in good

faith and are thoroughly documented in the docket. (Exs. 8-9)

Defendants ultimately answered the complaint rather than moving to dismiss for

insufficient process or service under Rule 12(b)(4) or (5), thereby waiving any such

objections and confirming the sufficiency of service. Under Federal Rule of Civil Procedure

4(m), and as interpreted in *Borzeka v. Heckler,* 739 F.2d 444 (9th Cir. 1984), and *Henderson

v. United States,* 517 U.S. 654 (1996), service may "relate back" to the date of original

filing—especially where defendants are notified, ultimately respond, and no prejudice is

shown. This principle is particularly applicable here, where Plaintiffs proceeded pro se and

Defendants had ample means to evade service yet were ultimately served through persistent and lawful efforts.

Plaintiffs respectfully request that the Court recognize these documented service attempts as evidence of diligence and good faith, deem all service of process sufficient and relating back to the original dates of service, and excuse any technical defects in light of the extraordinary circumstances, absence of prejudice to Defendants, and the interests of justice.

## 22. Procedural Irregularities - Motions to Stay Proceedings (Discovery)

On July 7, 2017, Defendants filed a Motion to Stay Proceedings (Doc. 87, Ex. 27), seeking to pause all further filings, discovery, and proceedings—except for responses to pending dispositive motions—until the Court ruled on Defendants' motions to dismiss and for judgment on the pleadings. Defendants argued that Plaintiffs' claims were duplicative of prior litigation, that service of process was defective, that Plaintiffs had failed to comply with court orders, and that Plaintiffs' filings were excessive and lacked merit. Defendants also invoked the court's inherent authority to manage its docket, requesting that no new motions, amendments, or discovery be permitted until dispositive motions were resolved.

Plaintiffs opposed the motion, arguing that a stay would unfairly prejudice their ability to present new evidence, respond to Defendants' evolving arguments, and address ongoing procedural irregularities. Plaintiffs maintained that their filings were necessary to preserve their rights and ensure a complete and accurate record, particularly in light of new predicate acts and continuing harm not addressed in prior litigation. Plaintiffs further asserted that Defendants' motion to stay was part of a broader pattern of procedural tactics designed to suppress Plaintiffs' claims and evade substantive review of the RICO allegations. (Doc. 87) (Ex. 27) and related briefing are important evidence of the procedural obstacles Plaintiffs

faced and support Plaintiffs' argument that extraordinary circumstances, prejudice, and due process violations occurred—warranting relief under Rule 60(b).

## 23. Fraud on the Court – Filing Issues and Docket Manipulation

Between July 5, 2017, and July 13, 2017, Plaintiffs observed significant irregularities and apparent manipulation in the docket sequence for Case No. 1:17-cv-01181-TWT. Specifically, the following entries illustrate both the procedural activity and the irregular order in which critical filings were entered:

Doc. 84: Return of Service executed on Lionsgate Entertainment, establishing proper service and triggering the answer deadline.

Doc. 85: Amended Complaint filed, naming Judge Thrash as a defendant and demanding a jury trial. Plaintiffs note that the list of parties was modified on July 12, 2017, after the initial filing, raising concerns about post-filing alteration. (Ex. 26)

Docs. 86 & 88: Notices of Filing Exhibits, with extensive attachments supporting Plaintiffs' motions and Amended Complaint.

Doc. 87: Defendants' Motion to Stay Proceedings, seeking to halt all filings and discovery pending dispositive motions. (Ex. 27)

Doc. 89: Defendants' Motion for Protective Order and to Stay/Modify Discovery, further attempting to restrict Plaintiffs' access to evidence and the court. (Ex. 29)

Doc. 90: Defendants' omnibus response in opposition to multiple pending motions.

Plaintiffs respectfully submit that the irregular docket sequence, the modification of party lists after filing, and the timing of Defendants' procedural motions collectively raise serious concerns of docket manipulation and fraud on the court. Such actions undermine the integrity

and transparency of the judicial process, particularly where post-filing alterations may impact party status, deadlines, and the substantive rights of litigants.

These irregularities are highly relevant to Plaintiffs' Rule 60(b) motion, supporting claims of fraud, misrepresentation, and extraordinary circumstances warranting relief. Plaintiffs request that the Court closely examine the docket history, address any post-filing modifications, and consider these issues as further grounds to vacate all affected orders and ensure a fair adjudication on the merits.

## 24. Extraordinary Circumstances – Doc. 92: Order Denying Plaintiffs' Motion to Compel Discovery

On October 18, 2017, but posted all orders on October 19, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc. 137) (Ex. 56) denying Plaintiffs' Motion to Compel Defendants to Answer Discovery in Case No. 1:17-cv-01181-TWT. The Court ruled that all discovery would remain stayed until it ruled on Defendants' pending Motion for Judgment on the Pleadings, and did not address the merits of Plaintiffs' discovery requests or the necessity of the evidence sought.

This order exemplifies a broader pattern in which Plaintiffs' efforts to obtain discovery and develop the factual record were systematically delayed or denied, pending the resolution of Defendants' dispositive motions. The Court's blanket stay of discovery, without individualized review or consideration of Plaintiffs' specific needs as pro se litigants, resulted in significant procedural prejudice and deprived Plaintiffs of meaningful access to evidence necessary to support their claims.

Plaintiffs respectfully submit that this pattern of delayed and denied discovery, as reflected in (Doc. 92) (Ex. 78) and related orders, denied Plaintiffs a fair opportunity to

litigate their case on the merits. This cumulative prejudice and lack of meaningful access to discovery constitute extraordinary circumstances supporting relief under Rule 60(b).

## 25. Doc. 91 – Plaintiffs' Reply to Defendants' Opposition and Docket Irregularities

In (Doc. 91) (Ex. 30), Plaintiffs replied to Defendants' opposition to the Motion to Strike, raising critical procedural and substantive issues. Plaintiffs noted that the sequence of docket entries (Docs. 84–91) (Ex. 30) did not correspond to the actual order of filings and submissions; attachments and modifications were made days after initial entries, and several filings appeared out of chronological order. These irregularities, particularly concerning the Amended Complaint and related motions on service, recusal, and discovery, suggest potential alteration or manipulation of the docket, undermining the integrity of the record and Plaintiffs' ability to track and respond to filings.

Plaintiffs respectfully request that the Court take judicial notice of these docket irregularities, review the sequence and content of the filings, and consider this evidence of procedural irregularity and potential fraud on the court in support of relief under Rule 60(b).

In their reply, Plaintiffs documented that Defendants failed to timely answer the Complaint as required by Fed. R. Civ. P. 12(a), and that their answers and counterclaims were filed late and not properly served. Plaintiffs argued that these untimely responses constituted an admission of liability under Rule 55 and supported entry of default. Plaintiffs further contended that Defendants only objected to service of process after default, despite Plaintiffs having 90 days to perfect service by court order, and that perfected service should relate back to the original date.

The filing also raised concerns of judicial favoritism, noting that the presiding judge ignored perfected service and ruled for Defendants, and that Defendants sought to transfer the case to

a perceived favorable judge. Plaintiffs challenged Defendants' counterclaim seeking to bar

future litigation as a violation of constitutional rights and RICO procedures, and alleged a

broader pattern of manipulation of court procedures and officials. Reference was made to

prior cases where Defendants defaulted or where improper judicial transfers and attorney

withdrawals occurred, indicating systemic issues.

Plaintiffs requested recusal and reassignment to an impartial judge, and denial of

Defendants' oppositions until proper review of service and default issues. All arguments and

objections were preserved in the record (Doc. 91) (Ex. 30) to support claims of procedural

irregularity, judicial bias, and deprivation of due process—establishing a pattern of prejudice

and deprivation of rights relevant to Plaintiffs' request for relief under Rule 60(b).

**26. Doc. 92 – Order Denying Plaintiffs' Motion to Compel Discovery**

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc 92) denying

Plaintiffs' Motion to Compel Defendants to Answer Discovery in Case No. 1:17-cv-01181-

TWT. In this order, the Court stated that all discovery would remain stayed until it ruled on

Defendants' pending Motion for Judgment on the Pleadings.

The Court did not address the merits of Plaintiffs' discovery requests or the necessity of

the evidence sought. This order exemplifies a broader pattern throughout the proceedings in

which Plaintiffs' efforts to obtain discovery and develop the factual record were

systematically delayed or denied, pending the resolution of dispositive motions filed by

Defendants.

The Court's blanket stay of discovery, without individualized review or consideration of

Plaintiffs' specific needs as pro se litigants, contributed to significant procedural prejudice

and deprived Plaintiffs of meaningful access to evidence necessary to support their claims.

Plaintiffs respectfully submit that this pattern of delayed and denied discovery, as reflected in Doc 92 and related orders, denied Plaintiffs a fair opportunity to litigate their case on the merits. This cumulative prejudice and lack of meaningful access to discovery constitute extraordinary circumstances supporting relief under Rule 60(b).

## 27. Discovery Disputes – Doc. 93: Plaintiffs' Motion to Compel Discovery and Opposition to Defendants' Motion to Stay Discovery

On July 13, 2017, Plaintiffs filed a Motion to Compel Discovery and Opposition to Defendants' Motion to Stay Discovery (Doc. 93) (Ex. 31). Plaintiffs documented that they served their first discovery requests on June 8, 2017, in compliance with Local Civil Rule 5.4, and that Defendants failed to provide timely responses by the July 5, 2017 deadline. Plaintiffs further stated that Defendants' counsel only contacted them after the deadline had passed, seeking to delay discovery, and that Plaintiffs did not consent to any waiver of their discovery rights.

Plaintiffs expressly withdrew any informal agreement to stay discovery once Defendants filed their motion to stay, which Plaintiffs viewed as procedurally improper and deceptive. Plaintiffs argued that Defendants waived their own right to discovery by failing to initiate it within the required 30-day period, and that Defendants' motion to stay discovery (Doc. 89) (Ex. 29) violated both Federal and Local Rules by being untimely and lacking the necessary preliminary reports required by Local Rule 16.2. Plaintiffs raised concerns of judicial bias and documented that Defendants' default status was not properly addressed under Rule 55, while emphasizing that their RICO claims were distinct from prior copyright actions and not barred by res judicata or statute of limitations.

Plaintiffs requested that the Court compel Defendants to answer all outstanding discovery immediately and deny Defendants' motion to stay or modify discovery. These documented procedural violations, failures to comply with discovery obligations, and concerns of judicial favoritism are preserved as evidence of procedural irregularity and prejudice, supporting Plaintiffs' request for relief under Rule 60(b) and the need for adjudication on the merits.

**28. Discovery Disputes – Doc. 95: Order Granting Defendants' Motion to Stay Discovery**

On July 13, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc. 95) (Ex. 32) granting Defendants' Motion to Stay (Doc. 87) (Ex. 27) and Motion for Protective Order and to Modify the Discovery Period (Doc. 89) (Ex. 29). The Court stayed all discovery until 30 days after it ruled on Defendants' dispositive motions, thereby relieving Defendants of any obligation to respond to Plaintiffs' discovery requests during that period. In its reasoning, the Court referenced the volume of Plaintiffs' filings and characterized many as lacking factual or legal basis or being "otherwise unintelligible."

As a result, Plaintiffs were denied the ability to obtain discovery necessary to support their claims, further compounding the prejudice caused by the Court's failure to address Plaintiffs' pending motions and properly entered defaults. This order exemplifies a broader pattern of procedural irregularities and summary denials that deprived Plaintiffs of meaningful access to the courts, and supports the existence of extraordinary circumstances warranting relief under Rule 60(b).

**29. Extraordinary Circumstances: Doc 125 – Order Denying Plaintiffs' Motion to Reassign:**

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc 125) (Ex. 46) denying Plaintiffs' Motion to Reassign (Doc 97) (Ex. 34), in which Plaintiffs sought transfer

of the case to a different judge due to allegations of bias, retaliation, and procedural irregularities.

The Court's order summarily denied the motion, stating only that "unhappiness with a judge's rulings is not grounds for reassigning a case." The order did not address or engage with the specific factual allegations or evidence of judicial prejudice and misconduct presented by Plaintiffs.

This order exemplifies a pattern throughout the proceedings in which Plaintiffs' motions raising judicial bias or requesting reassignment were summarily denied without individualized consideration or substantive analysis. By failing to address the underlying claims of prejudice and procedural deficiency, the Court's actions further deprived Plaintiffs of meaningful due process and reinforced the appearance of judicial bias. Plaintiffs respectfully submit that the summary denial of (Doc 97) (Ex. 34), as reflected in (Doc 125) (Ex. 44), is part of a cumulative pattern of procedural unfairness and judicial misconduct, supporting extraordinary relief under Rule 60(b).

**30. Doc. 126 – Order Denying Plaintiffs' Motion for Judgment as a Matter of Law (Rule 50)**

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc. 126) (Ex. 45) denying Plaintiffs' Motion for Judgment as a Matter of Law under Rule 50 (Doc. 99) (Ex. 35). The Court denied the motion on procedural grounds, stating that Rule 50 applies exclusively in the context of a jury trial—which had not occurred in this case—and further characterized Plaintiffs' motion as "frivolous," without addressing the substance or context of Plaintiffs' request.

This summary denial is consistent with a broader pattern in which the Court dismissed Plaintiffs' motions using procedural technicalities and dismissive language, rather than

engaging with the merits or providing individualized review. The Court's use of the term "frivolous" and failure to meaningfully consider Plaintiffs' arguments contributed to a prejudicial environment for pro se litigants and reinforced the appearance of judicial bias.

Plaintiffs submit that the denial of (Doc. 99) (Ex. 35), as reflected in (Doc. 126) (Ex. 45), further supports their claim that they were denied meaningful access to the courts and fair consideration of their claims. This cumulative pattern of summary denials and procedural dismissals constitutes extraordinary circumstances justifying relief under Rule 60(b).

31. **Pattern of Summary Denials – Doc. 128: Order Denying Plaintiffs' Motion for Judgment on the Pleadings, Summary Judgment, and Scheduling Order**

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued an order (Doc. 128) (Ex. 47) denying Plaintiffs' Motion for Judgment on the Pleadings and Motion for Summary Judgment (Doc. 61) (Ex. 17), as well as Plaintiffs' Motion for Scheduling Order (Doc. 64). The Court characterized Plaintiffs' motions and supporting memorandum as "largely incomprehensible," denied the motions on the grounds that Defendants were not in default, and found that the Motion for Summary Judgment did not comply with Rule 56(c) and Local Rule 56.1B. The Court also denied the Motion for Scheduling Order as "incomprehensible," without further explanation or engagement with the substance of Plaintiffs' requests.

This order exemplifies a broader pattern in these proceedings, wherein Plaintiffs' motions have been summarily denied with minimal explanation or individualized review. The Court's repeated use of dismissive language and reliance on procedural technicalities, rather than addressing the merits of Plaintiffs' claims or clarifying any alleged deficiencies, has deprived Plaintiffs of meaningful access to the courts and due process. Plaintiffs submit that this cumulative pattern of summary denials and lack of substantive engagement supports their

argument that extraordinary circumstances exist under Rule 60(b), justifying relief and

reassignment for fair adjudication.

## 32. Summary of Judicial Error – Doc. 138: Order Granting Defendants' Motion for Judgment on the Pleadings

On October 18, 2017, Judge Thomas W. Thrash, Jr. issued (Doc. 138) (Ex. 57), granting

Defendants' Motion for Judgment on the Pleadings (Doc. 74) (Ex. 23) and directing entry of

final judgment under Rule 54(b). The order dismissed all of Plaintiffs' claims—including

RICO and copyright infringement—on grounds of res judicata and collateral estoppel,

asserting these issues were previously litigated, and further characterized Plaintiffs'

remaining claims as "not only frivolous but ludicrous."

The order held that "recasting the claims as RICO claims does not defeat the res judicata

bar," and found Plaintiffs failed to state a plausible claim for copyright infringement as a

RICO predicate act. This directly contradicts Judge Story's earlier finding (Doc. 15) (Ex. 12)

that Plaintiffs had properly pleaded copyright infringement as a predicate act for RICO,

violating the law of the case doctrine. See *Christianson v. Colt Indus. Operating Corp.*, 486

U.S. 800, 816 (1988).

(Doc. 138) (Ex. 57) was issued as part of a series of same-day, batch rulings—including

simultaneous termination of all defendants and denial of all pending motions—without

individualized review or substantive engagement with Plaintiffs' procedural filings, such as

motions for default and to strike.

Critically, Judge Thrash continued to rule on the case—including dispositive motions and

his own status—after being named as a defendant in the amended complaint, in violation of

28 U.S.C. § 455(a), which mandates recusal where impartiality might reasonably be

questioned. See *Caperton v. A.T. Massey Coal Co.,* 556 U.S. 868, 876 (2009); *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir. 1985). Plaintiffs have also presented evidence of improper judge selection ("judge shopping") and personal or familial connections between Judge Thrash and the subject matter and parties, further undermining the appearance of impartiality.

Additionally, the order's Rule 54(b) certification was procedurally improper, as claims against Lionsgate and certain counterclaims remained unresolved, creating confusion and prejudicing Plaintiffs' appellate rights. See *Curtiss-Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 8-13 (1980); *Lloyd Noland Foundation, Inc. v. Tenet Health Care Corp.,* 483 F.3d 773, 779-81 (11th Cir. 2007); *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1566 (11th Cir. 1987). The Eleventh Circuit itself questioned the propriety of the 54(b) certification and the unresolved status of key parties and claims.

The summary dismissal of all claims, disregard for prior rulings and procedural objections, unresolved parties, and the judge's ongoing conflict of interest collectively constitute manifest injustice, denial of due process, and procedural irregularity. Relief is warranted under Rule 60(b), including vacatur of judgment and reassignment to restore fairness and impartiality. See *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988).

**33. Extraordinary Circumstances for Order 168:**

Filing Restrictions Imposed Without Notice or Opportunity to Respond: On August 10, 2018, the District Court entered (Order 168) (Ex. 62), granting Defendants' motion for summary judgment and imposing a broad filing injunction under the All Writs Act, enjoining

Plaintiffs from filing any further pleadings or new lawsuits based on the same operative facts without prior court approval.

Critically, this order was issued without providing Plaintiffs any notice or meaningful opportunity to respond to the proposed filing restrictions, in violation of fundamental due process principles. See *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 (11th Cir. 2005) ("Basic fairness requires that the affected party have notice and an opportunity to respond before a filing injunction is imposed."). The lack of advance notice and opportunity to be heard constitutes extraordinary circumstances justifying Rule 60(b) relief.

## 34. Filing Restrictions Imposed Without Notice or Opportunity to Respond

On August 10, 2018, the District Court entered (Order 168) (Ex. 62), granting Defendants' motion for summary judgment and imposing a broad filing injunction under the All Writs Act. This order enjoined Plaintiffs from filing any further pleadings or new lawsuits based on the same operative facts without prior court approval.

Critically, (Order 168) (Ex. 62) was issued without providing Plaintiffs any notice or meaningful opportunity to respond to the proposed filing restrictions, in violation of fundamental due process principles. See *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 (11th Cir. 2005) ("Basic fairness requires that the affected party have notice and an opportunity to respond before a filing injunction is imposed."). The absence of advance notice and an opportunity to be heard constitutes an extraordinary circumstance warranting relief under Rule 60(b).

Plaintiffs respectfully submit that the imposition of filing restrictions without due process further deprived them of access to the courts, compounded existing procedural prejudice, and supports vacatur of (Order 168) (Ex. 62) and all related relief under Rule 60(b).

## 35. Transparency:

Throughout the litigation, Plaintiffs did not receive notice of certain critical filings or orders, including the reassignment of the case, and were not afforded the opportunity to respond or object. As pro se litigants, this lack of notice and transparency prejudiced Plaintiffs' ability to participate meaningfully in the proceedings and to protect their rights.

The absence of proper notice regarding key judicial actions deprived Plaintiffs of the opportunity to be heard, respond, or seek timely relief, further compounding existing procedural prejudice and undermining the fairness of the process. Plaintiffs respectfully submit that these deficiencies in transparency and notice constitute extraordinary circumstances and due process violations supporting relief under Rule 60(b).

## 36. Manifest Injustice, Extraordinary Circumstances, and Pattern of Judicial and Defense Misconduct

The summary dismissal of all claims, the Court's disregard for prior rulings and procedural objections, the presence of unresolved parties, and the judge's ongoing conflict of interest collectively constitute manifest injustice, denial of due process, and procedural irregularity. These cumulative errors and misconduct, both judicial and by the defense, have deprived Plaintiffs of a fair opportunity to be heard and to have their claims adjudicated on the merits.

Relief is therefore warranted under Rule 60(b), including vacatur of judgment and reassignment to restore fairness and impartiality. See *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988) (vacatur appropriate where judicial bias or circumstances undermine the appearance of impartiality and fairness).

## 37. Clarification of Factual and Legal Distinctions Between Civil RICO Complaint and Copyright Complaints in Support of Fraud Upon the Court (Rule 60(b)(3) and 60(d)(3))

Plaintiffs' prior copyright actions (e.g., *William James v. Tyler Perry et al., N.D. Ind.* 2:13-cv-139; *Terri Donald v. Tyler Perry Studios et al.,* E.D. Pa., transferred to S.D.N.Y. 13 Civ. 1655 (WHP)) were limited to single acts of copyright infringement and sought only copyright remedies. In contrast, the present civil RICO complaint (Docs. 1, 85) (Ex. 10, 26) pleads all four elements of a RICO claim, alleges a pattern of racketeering activity involving multiple predicate acts, asserts the existence of an enterprise, and seeks RICO-specific remedies such as treble damages and a constructive trust. The RICO complaint is not limited to copyright infringement, but encompasses a broader scheme of racketeering and ongoing harm not previously adjudicated.

This distinction is critical. Defendants have repeatedly represented in their filings (Docs. 31, 52, 74, 157, Exs. 13, 15, 23, 58)—and the Court has echoed in its orders (Docs. 138, 168, Exs. 57, 62)—that Plaintiffs' RICO action is "the same as" a copyright action. These representations are both inaccurate and misleading. As detailed in (Exhibit 5: Comparative Analysis of Procedural Irregularities, Predicate Acts, and the Denial of Merits-Based Adjudication in Prior Copyright Cases and the Current Civil RICO Action and further demonstrated in Exhibit 6 (Comparative Analysis of Civil RICO Complaint (Docs. 1, 85, Exs. 10, 26) and Prior Copyright Complaints), Plaintiffs' RICO claims assert a distinct cause of action, predicated on a pattern of racketeering activity, multiple predicate acts, and ongoing harm not previously litigated.

Judge Richard W. Story, in (Order 15, Ex. 12), expressly recognized that Plaintiffs had brought a civil RICO action with predicate acts related to copyright infringement and

counterfeit goods, and that the relief sought included monetary damages or, if warranted, a permanent injunction. This acknowledgment confirms that Plaintiffs' claims are not limited to copyright infringement, but instead allege a broader scheme of racketeering as defined by RICO. Defendants' summary judgment arguments rely heavily on the declaration of Tom J. Ferber (Doc. 157-3, Ex. 59) and exhibits purporting to show that Plaintiffs' claims are duplicative of prior litigation. However, these characterizations are inaccurate. The present action includes RICO predicate acts, an ongoing conspiracy, and new evidence of fraud and judicial misconduct—none of which were adjudicated in the prior actions. Genuine disputes of material fact and law exist, precluding summary judgment and any finding of "vexatious litigation" as a matter of law.

Despite this, Judge Thrash and Defendants have repeatedly mischaracterized the nature and scope of Plaintiffs' claims, conflating the RICO action with prior copyright actions and asserting that res judicata or collateral estoppel should bar Plaintiffs' claims. Such representations are both factually and legally erroneous. Supreme Court and Eleventh Circuit precedent make clear that a RICO action is not barred where the legal theories, factual predicates, and injuries differ from those previously litigated.

Moreover, the record reflects that Judge Thrash's orders (e.g., Doc. 138, Ex. 57) and Defendants' coordinated defense strategy have contributed to the ongoing mischaracterization of Plaintiffs' claims, to Plaintiffs' prejudice. Plaintiffs maintain that their current action is based on a distinct set of facts and legal theories, and that the ongoing harm and pattern of racketeering activity alleged herein have not been addressed or adjudicated in any prior proceeding.

Accordingly, Plaintiffs respectfully submit that the Court and all parties must recognize and address the substantive differences between the present RICO claims and any prior copyright litigation. The attached Exhibit 6 provides a detailed comparative analysis of the operative complaints, demonstrating why res judicata and collateral estoppel do not bar Plaintiffs' RICO claims.

This Exhibit summarizes the legal and factual distinctions between the present RICO action and the earlier copyright actions, demonstrating that the RICO complaint is not duplicative and addresses separate legal issues, parties, and remedies.

**38. Plaintiffs' Statement of Facts – Exhibit 6 - Who, What, When, Where, And How**

Who, What, When, Where, Why, and How (with Citations to Doc. 1 and Doc. 85)

(Ex. 10, 26)

Who:

Defendants Tyler Perry, Oprah Winfrey, Tyler Perry Studios, OWN, Lionsgate, Harpo, and their associates.

What:

Engaged in a long-standing, coordinated scheme to acquire, counterfeit, and commercially exploit Plaintiffs' and others' intellectual property through a pattern of racketeering activity. The enterprise is described as a "cartel" or "organized crime syndicate," with the common purpose of monopolizing the entertainment industry, suppressing original creators, and maximizing illicit profits.

When:

The alleged conduct spans from at least the 1990s through the date of the complaint (see Doc. 1, Doc. 85). (Ex. 10, 26)

Where:

The racketeering activity occurred across multiple states within the United States and internationally, facilitated by Defendants' positions within their companies and their extensive business relationships.

Why:

To monopolize the entertainment industry, suppress competition from original creators, and maximize profits through illegal means.

How:

By forming and operating an enterprise that engaged in repeated acts of:

Copyright counterfeiting/plagiarism

Mail and wire fraud

Money laundering

Extortion

Obstruction of justice

Bribery

Trafficking in counterfeit goods

These acts are evidenced by numerous lawsuits, settlements, and detailed factual allegations set forth in (Doc. 1 and Doc. 85) (Ex. 10, 26).

Injury:

As a direct result of Defendants' racketeering conduct, Plaintiffs and similarly situated creators have suffered ongoing injuries, including:

Lost royalties

Uncompensated labor

Reputational harm

Exclusion from the industry

Financial hardship

Emotional distress

Support:

All claims are supported by specific factual allegations and legal arguments detailed in the Initial

Complaint (Doc. 1) (Ex. 10), Amended Complaint (Doc. 85) (Ex. 26), and throughout Exhibit 6.

## 39. Potential Judicial Conflict of Interest, Missing Record Pages, and Impact on

### Transparency and Due Process

Plaintiffs further note that, after discovering potential connections between Judge Thomas

W. Thrash, Jr., actress Annie Thrash (a cast member in a Tyler Perry production), and

Defendant Tyler Perry, Plaintiffs raised concerns regarding possible conflicts of interest and

the appearance of impropriety. Despite requesting clarification and including these issues in

the amended complaint and appellate exhibits, Plaintiffs never received a response, and

portions of the amended complaint addressing these matters were inexplicably removed from

the record, resulting in a discrepancy of over 20 pages and further undermining the

transparency and integrity of the proceedings.

## 40. Extraordinary Circumstances and Pattern of Defense Conduct:

Plaintiffs have been subjected to a sustained pattern of defense conduct designed to evade

substantive review and suppress adjudication of their RICO, antitrust, and conspiracy claims.

Throughout these proceedings, Defendants—represented by the same counsel—have

repeatedly mischaracterized this action as duplicative copyright litigation, despite the

operative complaint (Doc 1) (Ex. 10) alleging distinct RICO predicate acts, ongoing

racketeering, and new injuries not previously litigated.

This coordinated defense strategy included the filing of substantively identical answers

and counterclaims, repeated denial of wrongdoing, late filings, and motions to reassign and

transfer the case, all of which were intended to delay, confuse, and prevent a merits-based

resolution. (See Docs 31, 74, 101, 102) (Ex. 13, 23) Defendants' misrepresentations were

adopted by the Court in (Orders 138 and 168) (Ex. 57, 62), resulting in the misapplication of

res judicata and collateral estoppel, and the erroneous dismissal of Plaintiffs' RICO claims.

Plaintiffs also faced procedural irregularities, including improper denial of default

remedies, denial of leave to amend, and the dismissal of claims against Barbara Hunt for lack

of personal jurisdiction, despite proper service and missed answer deadlines by certain

defendants. Judicial reassignments and orders were effectuated in part through court-only or

locked docket entries, further obscuring the record and depriving Plaintiffs of transparency

and due process.

These cumulative actions—misrepresentation, procedural manipulation, and denial of

substantive review—constitute extraordinary circumstances under Rule 60(b)(6) and fraud on

the court under Rule 60(b)(3). See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847,

864–65 (1988); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

Plaintiffs have been deprived of their Fifth Amendment right to a meaningful opportunity

to be heard and to have their statutory claims adjudicated on the merits. Throughout the

litigation, neither Plaintiff received notice of certain critical filings or orders, including the

reassignment of the case, and Plaintiffs were not given the opportunity to respond or object.

As pro se litigants, this lack of notice and transparency prejudiced Plaintiffs' ability to participate meaningfully in the proceedings and defend their rights.

**41. 28 U.S.C. § 1404(a): Transfer Sought if No Impartial Judge Unconnected to Atlanta Film/TV Industry Is Available:**

Research into *Ledford v. Tyler Perry Studios,* No. 1:2023cv05472 (N.D. Ga. 2023) revealed that the presiding judge, Eleanor L. Ross, dismissed the case as "frivolous," previously *Ledford v. Tyler Perry Studio's, et al.,* Civil Action No. 1:22-CV01253-ELR ("Ledford I") (N.D. Ga. Apr. 1, 2022) for failure to state claim. (Ex. 4) While there is no evidence linking Judge Ross's spouse's television program, "American Court with Judge Ross," to the Ledford case, the prominence of the film and television industry in Atlanta, the relatively small professional circles, and the frequency of industry-related litigation in the Northern District of Georgia ("NDGA") create a substantial risk of actual or perceived conflicts of interest for judges with direct or indirect ties to the industry.

**42. RELIEF REQUESTED**

For the reasons set forth above, and pursuant to Federal Rule of Civil Procedure 60(b), Plaintiffs respectfully request that the Court grant the following relief:

1. Vacatur of Judgment and Orders:

   Vacate all orders, judgments, and rulings entered by Judge Thomas W. Thrash, Jr. after he was named as a defendant in the Amended Complaint (Doc. 85) (Ex. 26)—including, but not limited to, (Docs. 92, 94-95, 124-138, 154, 168-169, 195) (Ex. 32-33, 44-58, 62-63, 77)—as void or voidable for lack of impartiality, procedural irregularity, and denial of due process.

2. Reassignment:

Reassign this case to a neutral and impartial judge for all further proceedings, in accordance with 28 U.S.C. § 455 and applicable precedent. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988). (Doc. 97) (Ex. 34)

3. Service of Process:

Deem all service of process upon Defendants sufficient and timely, and excuse any technical defects in service in light of the extraordinary circumstances and Defendants' actual notice and participation. See Docket Sheet (Ex. 8-9)

4. Entry of Default:

Enter default or default judgment against any defendant who failed to timely answer or otherwise respond, pursuant to Rule 55. (Ex. 119, 162) (Ex. 40, 61)

5. Discovery Relief:

Order the reopening of discovery and compel Defendants to answer all outstanding discovery requests, with a schedule tailored to the needs of pro se litigants. (Doc. 65, 66, 92) (Ex. 18-19, 78) Denial Order (Doc. 124) (Ex. 43)

6. Restoration of Claims and Parties:

Restore all unresolved claims and parties to the docket, including claims against Barbara Hunt and others dismissed for alleged lack of jurisdiction or procedural grounds. Default all Defendants under Civil Rico 18 U.S.C. 1962(c) for failing to answer the Amended Complaint (Doc. 85) (Ex. 26)

7. Preservation of Jury Trial Rights:

Preserve Plaintiffs' right to a jury trial on all claims so triable, as guaranteed by the Seventh Amendment. (Doc. 1, 85, 191, 194) (Ex. 10, 26, 74, 76) Order Denying (195) (Ex. 77)

8. Further Relief:

Grant such other and further relief as the Court deems just and proper, including but not limited to statutory, treble, and punitive damages, costs, and attorney's fees as authorized by law.

## SUMMATION

The cumulative effect of the Court's procedural irregularities, Defendants' coordinated misconduct, and the denial of Plaintiffs' meaningful participation and review has resulted in manifest injustice and extraordinary circumstances warranting relief under Federal Rule of Civil Procedure 60(b)(3) and (6). The record demonstrates a pattern of misrepresentation, procedural manipulation, and denial of due process, which has deprived Plaintiffs of a fair opportunity to have their claims adjudicated on the merits.

To preserve the integrity of the judicial process and ensure fundamental fairness, Plaintiffs respectfully request vacatur of all affected judgments and orders, reassignment to a neutral and impartial judge, and restoration of their rights and claims. Such relief is necessary to remedy the prejudice suffered and to uphold the principles of justice and due process mandated by law.

## VERIFICATION

We, William James and Terri Tucker (Lowe) declare under penalty of perjury, pursuant to

28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 1st day of July 2025.

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

## RULE 11 CERTIFICATION

We, William James and Terri Lowe hereby certify, pursuant to Rule 11 of the Federal Rules of

Civil Procedure, that to the best of our knowledge, information, and belief, formed after an

inquiry reasonable under the circumstances, the foregoing motion and all supporting documents

are well grounded in fact and are warranted by existing law or by a good faith argument for the

extension, modification, or reversal of existing law; that the motion is not interposed for any

improper purpose, such as to harass or to cause unnecessary delay or needless increase in the

cost of litigation; and that the factual contentions have evidentiary support.

Date Executed, July 1, 2025.

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff

Corrected Ex. 2 Pls.' Joint Decl'r – Statement of the
facts for Plaintiffs' Rule 60(b) Motion and memorandum

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

William James and
Terri Tucker (Lowe),
Plaintiffs,

v.

Barbara Hunt, Tyler Perry,
Oprah Winfrey, et al., and
Judge Thomas W. Thrash, Jr.
Defendants.

Civil Action No. 1:17-cv-01181-TWT

Re: Plaintiffs' Joint Motion To Vacate
Judgment, Reopen Case, And Enter Default
Judgment Pursuant To Fed. R. Civ. P.
60(B)(1)-(6), (D)(3)

Thomas W. Thrash, Jr. U.S.D.J.

## CERTIFICATE OF SERVICE

We hereby certify that on this 1st day of July, 2025, we caused to be served a true and correct

copy of the foregoing:

Plaintiffs' Joint Declaration for Plaintiffs' Notice of Motion and Motion for Relief Pursuant to

Rule 60(b); Memorandum of Law in Support; Declaration(s) and all exhibits thereto,

by filing the same with the Clerk of Court in person, as Plaintiffs are pro-se and do not have

access to electronic filing. We further certify that a copy was served by first-class U.S. Mail,

postage prepaid, addressed as follows:

### Clerk of the Court:

C/O Judge Thomas W. Thrash, Jr.
United States District Court
Northern District of Georgia
Richard B. Russell Federal Building and United States Courthouse
2211 United States Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

CORRECTED COPY

Defendants Attorneys:

Lori M. Beranek
Assistant United States
Attorney
600 U.S. Courthouse
75 Spring Street SW
Atlanta, GA 30303

Tom J. Ferber
7 Times Square
New York, NY 10036-
6569

Richard Gordon
1495 Powers Ferry Road
Ste 101
Marietta, GA 30067

Respectfully submitted,

Dated: July 1, 2025

Terri Tucker (Lowe)
Address: 1136 Joslin Path
Douglasville, GA 30134
Phone: 678-822-4593
Email: terrilowe43@gmail.com
Pro Se Plaintiff

William James
Address: 14920 Ashland Ave
Harvey, Illinois 60426
Phone: 773-990-9373
Email: bj255758@yahoo.com
Pro Se Plaintiff




PRIORITY MAIL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRIORITY MAIL

PRESS FIRMLY TO SEAL
RESS FIRMLY TO SEAL



UNIT
POST

VISIT US AT USPS.COM®
Label 108A, Nov 2018

Un
Po

FROM:



**UNITED STATES POSTAL SERVICE** | **Retail**



ited States
stal Service®

P | **US POSTAGE PAID**
$10.10
Origin: 30134
07/01/25
1226850394-29

**PRIORITY MAIL®**

0 Lb 11.80 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 07/03/25

C039

SHIP
TO:  75 TED TURNER DR SW
ATLANTA GA 30303-3315

**USPS TRACKING® #**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9505 5121 1666 5182 2867 20

- Expected delivery da
- Domestic shipments
- USPS Tracking® serv
- Limited international
- When used internatio

*Insurance does not cover ce
Domestic Mail Manual at *http*
** See International Mail Manu

stinations.

e.

**FLAT RATE**
ONE RATE ■ ANY WI

**TRACKED** ■


PS0000100001

**UNITED STATES POSTAL SERVICE®** | **PRIORITY® MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: Terri (Love)Tucker
William James
1136 Josin Path
Douglasville, GA 30134

TO: Clerk of the Court
c/o Judge Thomas W Thrash Jr
United States District Court
Northern District of Georgia
Richard B. Russell Federal bldg
2211 united States Courthouse
75 Ted Turner Dr., SW
Atlanta, GA 30303-3309

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE